# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

BENJAMIN REETZ,

             **Plaintiff,**

    v.

LOWE'S COMPANIES, INC.,
ADMINISTRATIVE COMMITTEE OF
LOWE'S COMPANIES, INC., PAT
BELANGER, ROBIN BORNKAMP,
LANCE COOK, MATTHEW EUREY,
DAVID GREEN, BOB IHRIE, MARK
IMHOFF, TERRY JOHNSON, ANGELA
KIRBY, JANICE LITTLE, TIFFANY
MASON, COLLEEN PENHALL, STACEY
RYAN, KRISTIE SHUGART, BRANDON
SINK, GREGOR TEUSCH, JENNIFER
WEBER, JOHN and JANE DOES 1-20, and
AON HEWITT INVESTMENT
CONSULTING, INC.,

             **Defendants.**

Case No. 5:18-CV-00075-KDB-DCK

## LOWE'S DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT

Defendants Lowe's Companies, Inc. ("Lowe's"), the Administrative Committee of Lowe's Companies, Inc. (the "Administrative Committee"), and each of the individual defendants named in Plaintiff's First Amended Complaint (collectively, the "Lowe's Defendants"), by and through counsel, respectfully submit their answer and affirmative defenses to Plaintiff Benjamin Reetz's ("Plaintiff's") First Amended Complaint (Dkt. No. 84) (the "Amended Complaint"). The Lowe's Defendants deny each and every allegation contained in the Amended Complaint, except as specifically admitted herein, and any factual averment admitted herein is admitted only as to the specific facts and not as to any conclusions, arguments, or characterizations which are contained in any averment or in the Amended Complaint as a whole. To the extent the Amended Complaint contains headings,

footnotes, or other material that is inappropriate under Rule 8 and Rule 12(f) of the Federal Rules of Civil Procedure, no response to such material is required. If, however, a response is required, the Lowe's Defendants deny all headings and footnotes in the Amended Complaint, unless specifically admitted herein.

The Lowe's Defendants answer the specific allegations in the Amended Complaint as follows, and the foregoing statements are incorporated into each numbered paragraph of this answer:

## NATURE OF THE ACTION

1. Plaintiff Benjamin Reetz ("Plaintiff"), individually and as the representative of the class defined herein and the Lowe's 401(k) Plan ("Plan"), brings this action against Lowe's Companies, Inc. ("Lowe's Corp."), the Administrative Committee of Lowe's Companies, Inc. ("Administrative Committee"), Pat Belanger, Robin Bornkamp, Lance Cook, Matthew Eurey, David Green, Bob Ihrie, Mark Imhoff, Terry Johnson, Angela Kirby, Janice Little, Tiffany Mason, Colleen Penhall, Stacey Ryan, Kristie Shugart, Brandon Sink, Gregor Teusch, Jennifer Weber, and John and Jane Does 1-20 (collectively, "Lowe's"), as well as Aon Hewitt Investment Consulting, Inc. ("Hewitt") (together with Lowe's, "Defendants"), for breach of their fiduciary duties under the Employee Retirement Income Security Act ("ERISA"). As described herein, Lowe's imprudently selected and retained the Hewitt Growth Fund for the Plan, in consultation with Hewitt (which served as the Plan's fiduciary investment consultant), despite the fact that (1) the Hewitt Growth Fund was a new and largely untested fund at the time it was added to the Plan; (2) the Hewitt Growth Fund was underperforming its benchmark at the time it was added to the Plan and continued to underperform after it was added to the Plan; and (3) the Hewitt Growth Fund was not utilized

by fiduciaries of any similarly-sized plans and was generally unpopular in the marketplace. To make matters worse, Defendants placed over $1 billion of the Plan's assets into this new, underperforming, and unpopular fund, and disturbed participants' investment choices by transferring assets from eight existing funds in the Plan (which were generally performing well) and putting them in the Hewitt Growth Fund, which replaced these existing funds in the Plan's investment lineup. Prior to this $1 billion investment by the Plan, the Hewitt Growth Fund had struggled to attract capital from other investors and had only $350 million in total assets, such that the Plan's investment resulted in a four-fold increase in the size of this fund. Hewitt had a conflict of interest in recommending this proprietary fund for the Plan, and improperly did so to further its own financial interests instead of the interests of the Plan's participants. Lowe's should have recognized this conflict of interest, and should have recognized (as other 401(k) plan fiduciaries did) that the Hewitt Growth Fund was inappropriate for the Plan. By causing the Plan to include and retain this fund, Defendants breached their fiduciary duties under Section 404 of ERISA (29 U.S.C. § 1104) and caused the Plan to suffer millions of dollars in investment losses.[1] Plaintiff brings this action to recover these losses, disgorge the profits that Hewitt received on account of its fiduciary breaches, and obtain equitable relief and other appropriate relief as provided by Sections 409 and 502 of ERISA (29 U.S.C. §§ 1109, 1132).

**ANSWER TO PARAGRAPH 1:** The Lowe's Defendants admit that Plaintiff has filed a putative class action lawsuit asserting claims under ERISA but deny that those claims are valid or that Plaintiff is entitled to any of the relief sought for his claims. The Lowe's Defendants admit that Aon Hewitt Investment Consulting, Inc. ("Aon Hewitt") provided

---

[1] In addition to breaching its fiduciary duties, Lowe's also breached its duty to monitor Hewitt.

services with respect to the Lowe's 401(k) Plan ("the Plan"), and that over $1 billion of the Plan's assets were invested in the Aon Hewitt Growth Fund. The Lowe's Defendants deny the remaining allegations in paragraph 1 of the Amended Complaint, and specifically deny that the Lowe's Defendants breached any fiduciary duties or otherwise violated ERISA. The Lowe's Defendants deny the allegations in footnote 1 of the Amended Complaint.

## PRELIMINARY STATEMENT

2.      As its name implies, Aon Hewitt Investment Consulting Inc. provides investment consulting services to institutional clients, including 401(k) plans such as the Plan. In this role, Hewitt provides advice regarding, among other things, "investment lineup analysis, investment policy development, manager searches, and ongoing performance reporting and evaluation."[2]

**ANSWER TO PARAGRAPH 2:** The Lowe's Defendants admit that Aon Hewitt provides investment consulting services. The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in paragraph 2 and footnote 2 of the Amended Complaint and therefore deny them, except that the Lowe's Defendants admit that Plaintiff purports to quote a website, but the Lowe's Defendants rely on the website to speak for itself, rather than on Plaintiff's characterization thereof.

3.      As an investment consultant, Hewitt serves in a fiduciary capacity and is obligated to provide investment analysis and make investment recommendations in an independent and unbiased manner, and exercise the high standard of care that applies to

---

[2] http://www.aon.com/human-capital-consulting/retirement/investment-consulting/about-us/our-clients/defined-contribution-plans.jsp (last visited April 20, 2018).

fiduciaries under ERISA. Indeed, Hewitt specifically markets itself as providing "independent" and objective investment advice.[3]

**ANSWER TO PARAGRAPH 3:** The first sentence of paragraph 3 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in the first sentence of paragraph 3. The Lowe's Defendants deny the allegations in the second sentence of paragraph 3 except to admit that Plaintiff purports to quote a website, but the Lowe's Defendants rely on that website to speak for itself, rather than Plaintiff's characterization thereof.

4. However, Hewitt has not been content to merely provide consulting advice to its retirement plan clients. In an effort to expand beyond its core consulting business, Hewitt recently began offering its own line of investment products (referred to herein as the "Hewitt Funds"), which it introduced to the 401(k) plan marketplace in the fourth quarter of 2013.

**ANSWER TO PARAGRAPH 4:** The Lowe's Defendants admit that Aon Hewitt offers investment products to 401(k) plans. The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in paragraph 4 of the Amended Complaint and therefore deny them.

5. In connection with the launch of the Hewitt Funds, Hewitt attempted to leverage its existing consulting client base to attract investors. The overwhelming majority of 401(k) plan sponsors that it advised did not fall for the sales pitch, and rejected Hewitt Funds for their plans through their own fiduciary screening process. However, Lowe's was

---

[3] *See, e.g.,* http://www.aon.com/human-capital-consulting/retirement/investment-consulting/ ("We provide independent advice"); http://www.aon.com/human-capital-consulting/retirement/investment-consulting/core-services/manager-evaluation-search.jsp ("We provide ourselves on our independence and objectivity").

not as discerning, and began offering three Hewitt Funds in the Plan in 2015 (the Hewitt Growth Fund, Hewitt Income Fund, and Hewitt Inflation Fund).

**ANSWER TO PARAGRAPH 5:** The Lowe's Defendants lack knowledge or information sufficient form a belief regarding the truth of the allegations in the first and second sentences of paragraph 5 of the Amended Complaint and therefore deny them. The Lowe's Defendants deny the allegations in the third sentence of paragraph 5, except that the Lowe's Defendants admit that the Aon Hewitt Growth Fund, the Aon Hewitt Income Fund, and the Aon Hewitt Inflation Strategy Fund were added to the Plan's investment lineup in 2015.

6. Of those three funds, Defendants placed their biggest bet on the Hewitt Growth Fund by far. Specifically, Defendants replaced eight existing funds in the Plan with the Hewitt Growth Fund, and simultaneously transferred all of the Plan's assets in those existing funds — over $1 billion in total — into the Growth Fund. This transfer of assets constituted approximately half of the Plan's total asset base in pooled investment vehicles (*i.e.*, assets other than Lowe's Corp. stock). No other single fund in the Plan was entrusted with remotely the same amount of assets as the Hewitt Growth Fund.[4]

**ANSWER TO PARAGRAPH 6:** The Lowe's Defendants admit that, in 2015, more than $1 billion in assets were transferred to the Aon Hewitt Growth Fund from funds formerly in the Plan's investment lineup, approximately $45 million in assets were mapped into the Aon Hewitt Income Fund, and no assets were mapped into the Aon Hewitt Inflation Strategy

---

[4] By contrast, Defendants mapped only $45 million in assets from one existing fund into the Hewitt Income Fund, and did not map any assets into the Hewitt Inflation Fund (which was added to the Plan but did not replace any existing options).

Fund.  The Lowe's Defendants deny the remaining allegations in paragraph 6 and in footnote 4 of the Amended Complaint.

7.      It was extraordinarily irresponsible for Defendants to make such a large gamble on the Hewitt Growth Fund. At the time Defendants put the Plan's assets into this incipient fund, the Hewitt Growth Fund had less than two years of performance history. As a general rule, "fiduciaries of other retirement plans generally require a longer performance history of three or more years before considering an investment for a retirement plan."[5]

**ANSWER TO PARAGRAPH 7:**  The Lowe's Defendants deny the allegations in paragraph 7 and footnote 5 of the Amended Complaint.

8.      Moreover, the limited performance data that was available for the Growth Fund was anything but encouraging. In fact, at the time the Growth Fund was added to the Plan, it reported **negative** returns (-0.67%) from its inception in Q4 2013 through Q3 2015. By contrast, over the same period, the eight funds it replaced had a weighted average return of 7.30%.

**ANSWER TO PARAGRAPH 8:**  The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 8 of the Amended Complaint concerning the "weighted average return" of the funds referenced and therefore deny them.  The Lowe's Defendants deny the remaining allegations in paragraph 8.

9.      Given the limited—and negative—performance history of the Hewitt Growth Fund, and Hewitt's limited experience as an investment manager, the Hewitt Growth Fund was exceedingly unpopular in the marketplace. At the time the Growth Fund was added to the

---

[5] *See* Expert Report of Marcia Wagner, *Urahkhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-  cv-01614 (C.D. Cal.), Dkt. No. 160-9.

Plan in 2015, it was included in only two other retirement plans in the entire country (out of more than 648,000), representing 0.0003% of all such plans, and was not included in any similarly-sized retirement plans with at least $1 billion in total assets.

**ANSWER TO PARAGRAPH 9:** The Lowe's Defendants deny the allegations in the first sentence of paragraph 9 of the Amended Complaint. The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in the second sentence of paragraph 9 and therefore deny them.

10. The Hewitt Growth Fund was such a failure in the marketplace that the Plan's $1 billion investment constituted nearly three-quarters of all amounts invested in the Hewitt Growth Fund from all sources as of the end of 2015. The total amount invested by all other investors in this fund at year-end 2015 was only about $350 million **combined.**

**ANSWER TO PARAGRAPH 10:** The Lowe's Defendants admit that over $1 billion of Plan assets were invested in the Aon Hewitt Growth Fund by the end of 2015. The Lowe's Defendants deny that the Aon Hewitt Growth Fund was "a failure in the marketplace." The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in paragraph 10 of the Amended Complaint and therefore deny them.

11. Given the Hewitt Growth Fund's limited track record, poor performance history, and unpopularity in the 401(k) plan marketplace, prudent retirement plan fiduciaries would not have included—and did not include—this fund in their plan lineup, and certainly would not have invested $1 billion in plan assets in this fund.

**ANSWER TO PARAGRAPH 11:**  Paragraph 11 of the Amended Complaint states conclusions of law to which no response is required.  If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 11.

12.     In recommending the Hewitt Growth Fund for inclusion in the Plan, Hewitt put its own business interests ahead of the interests of Plan participants and beneficiaries, in violation of ERISA. Given Hewitt's conflict of interest in recommending this fund, Lowe's should have closely scrutinized Hewitt's recommendation, and rejected the Hewitt Growth Fund for the Plan as other fiduciaries did for their plans. By failing to do so, and allowing substantial Plan assets to be transferred into this fund, Lowe's also violated its fiduciary duties and failed to meet the applicable standard of care.

**ANSWER TO PARAGRAPH 12:**  Paragraph 12 of the Amended Complaint states conclusions of law to which no response is required.  If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 12.

13.     Since the Hewitt Growth Fund was added to the Plan in 2015, it has continued to perform poorly.  In fact, the fund has performed so poorly that the Plan already has suffered over $100 million in investment losses, based on a comparison of the returns of the Hewitt Growth Fund to the eight funds it replaced (weighted to reflect the Plan's investment in each fund). Yet, Defendants have stubbornly continued to retain this fund in the Plan, in breach of their ongoing duty to monitor the Plan's investments and remove imprudent ones. *See Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015) ("[A] trustee has a continuing duty to monitor trust investments and remove imprudent ones. This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset.")

**ANSWER TO PARAGRAPH 13:** The Lowe's Defendants deny the allegations in the first and second sentences of paragraph 13 of the Amended Complaint. The third sentence of paragraph 13 states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in the third sentence of paragraph 13. To the extent paragraph 13 purports to characterize and quote *Tibble v. Edison Int'l*, 135 S.Ct. 1823, 1828 (2015), the Lowe's Defendants rely on that judicial decision to speak for itself, rather than Plaintiff's characterization thereof.

14.     Plaintiff brings this action under ERISA to remedy these fiduciary breaches, recover the Plan's losses, disgorge the profits that Hewitt received on account of its disloyal conduct, prevent further mismanagement of the Plan, and obtain other appropriate relief.

**ANSWER TO PARAGRAPH 14:** Paragraph 14 states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants admit that Plaintiff has brought this action asserting claims under ERISA and is seeking various relief. The Lowe's Defendants deny that Plaintiff's claims are valid or that Plaintiff is entitled to any relief.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

**ANSWER TO PARAGRAPH 15:** Paragraph 15 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 15, except that the Lowe's Defendants state that they do not contest subject matter jurisdiction at this time.

16.    Venue is proper in this district under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because this is the district where the Plan is administered, where the breaches of fiduciary duties giving rise to this action occurred, and where Defendants may be found.

**ANSWER TO PARAGRAPH 16:** Paragraph 16 of the Amended Complaint states conclusions of law to which no response is required.  If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 16, except that the Lowe's Defendants state that they do not contest at this time that venue is proper in this District.

**PARTIES**

17.    Plaintiff Benjamin Reetz resides in Tacoma, Washington. Plaintiff Reetz is a current participant in the Plan, and has been a participant throughout the proposed class period. All of Plaintiff Reetz's Plan assets are invested in the Hewitt Growth Fund, and Plaintiff Reetz has suffered investment losses as a result of Defendants' fiduciary breaches and unlawful conduct as alleged in this Complaint.

**ANSWER TO PARAGRAPH 17:**  The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in the first sentence of paragraph 17 of the Amended Complaint and therefore deny them.  The Lowe's Defendants admit the allegations in the second sentence of Paragraph 17.  The third sentence of paragraph 17 states conclusions of law to which no response is required.  If, however, a response is required, the Lowe's Defendants deny the allegations in the third sentence of paragraph 17, except that the Lowe's Defendants admit that all of Plaintiff's Plan assets are invested in the Aon Hewitt Growth Fund.

18.     Defendant Lowe's Corp. is one of the nation's largest home improvement retailers, and is headquartered in Mooresville, North Carolina. Lowe's Corp. is the Plan sponsor within the meaning of 29 U.S.C. § 1002(16)(B), and exercises discretionary authority or discretionary control with respect to administration of the Plan and management and disposition of Plan assets. Lowe's Corp. is therefore a fiduciary under 29 U.S.C. § 1002(21)(A). Lowe's Corp. has delegated certain functions to the Administrative Committee. However, Lowe's Corp. retains ultimate decision-making authority with respect to the Plan, and appoints and has the authority to remove members of the Administrative Committee through its Board of Directors.

**ANSWER TO PARAGRAPH 18:**  The Lowe's Defendants admit the allegations in the first sentence of paragraph 18 of the Amended Complaint.  The remaining allegations in paragraph 18 state conclusions of law to which no response is required.  If, however, a response is required, the Lowe's Defendants deny the remaining allegations in paragraph 18.

19.     Defendant Administrative Committee is a committee of Lowe's employees appointed and overseen by the Lowe's Corp. Board of Directors. The Administrative Committee is responsible for selecting and monitoring the Plan's investment options and for making any necessary changes to the Plan's investment menu, subject to the ultimate oversight and discretion of Lowe's Corp. In performance of its duties, the Administrative Committee exercises discretionary authority or discretionary control with respect to administration of the Plan and management and disposition of Plan assets. Accordingly, the Administrative Committee is a fiduciary of the Plan pursuant to 29 U.S.C. § 1002(21)(A).

**ANSWER TO PARAGRAPH 19:**  Paragraph 19 of the Amended Complaint asserts conclusions of law to which no response is required.  If, however, a response is required, the

Lowe's Defendants deny the allegations in paragraph 19 except to admit that the Administrative Committee includes Lowe's employees and that the Lowe's Board of Directors appoints members of the Administrative Committee.

20.     Pat Belanger, Robin Bornkamp, Lance Cook, Matthew Eurey, David Green, Bob Ihrie, Mark Imhoff, Terry Johnson, Angela Kirby, Janice Little, Tiffany Mason, Colleen Penhall, Stacey Ryan, Kristie Shugart, Brandon Sink, Gregor Teusch, and Jennifer Weber are members of the Administrative Committee, or were members of the Administrative Committee during the putative class period.

**ANSWER TO PARAGRAPH 20:**  The Lowe's Defendants deny the allegations in paragraph 20 of the Amended Complaint, except that the Lowe's Defendants admit that the individuals listed in paragraph 20 include current or former members of the Administrative Committee.

21.     Defendant John and Jane Does 1-20 (the "Doe Defendants") are members of the Administrative Committee. The identities of the Doe Defendants are not currently known to Plaintiff.

**ANSWER TO PARAGRAPH 21:**  The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 21 of the Amended Complaint and therefore deny them.

22.     Defendant Hewitt is a registered investment adviser headquartered in Chicago, Illinois. Hewitt was formerly known as Hewitt EnnisKnupp, Inc., and is the successor by merger to Ennis Knupp & Associates, Inc., Hewitt Investment Group LLC, and Aon Investment Consulting Inc. Hewitt provided investment advisory services to the Plan dating back to at least 2009, and continues to provide investment advisory services to the

Plan, relating to the selection and monitoring of the Plan's investment options, and the removal, replacement, and retention of those investment options (subject to the ultimate discretion and approval of Lowe's). As the Plan's investment consultant, Hewitt rendered advice to the Plan on a regular basis in exchange for consulting fees, pursuant to a mutual agreement acknowledging that Hewitt would provide individualized advice to the Plan regarding investment policies and strategy along with portfolio composition that would serve as the primary basis for investment decisions with respect to Plan assets. Hewitt also received investment management fees and/or other fees in connection with the Plan's investment in the Hewitt Growth Fund. Hewitt is a fiduciary of the Plan pursuant to 29 U.S.C. § 1002(21)(A) because Hewitt exercised discretionary authority or control respecting disposition of Plan assets and rendered investment advice for a fee with respect to Plan assets.

**ANSWER TO PARAGRAPH 22:** The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in the first two sentences of paragraph 22 of the Amended Complaint and therefore deny them. The third and fourth sentences of paragraph 22 state conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in the third and fourth sentences of paragraph 22 except to admit that Aon Hewitt provided services with respect to the Plan and received fees for its services. The Lowe's Defendants deny the allegations in the fifth sentence of paragraph 22 except to admit that Aon Hewitt received fees in connection with its services with respect to the Plan. The last sentence of paragraph 22 states conclusions of law to which no response is required. If, however, a response is required the Lowe's deny the allegations in the fifth sentence of paragraph 22 and rely upon the

statutory provisions referenced therein to speak for themselves, rather than on Plaintiff's characterizations thereof.

23. Each Defendant identified above is also subject to co-fiduciary liability under 29 U.S.C. § 1105(a)(1)-(3) because it enabled other fiduciaries to breach their fiduciary duties, failed to comply with 29 U.S.C. § 1104(a)(1) in the administration of its duties, and/or failed to remedy other fiduciaries' breaches of their duties, despite having knowledge of such breaches.

**ANSWER TO PARAGRAPH 23:** Paragraph 23 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 23 and rely upon the statutory provisions referenced therein to speak for themselves, rather than on Plaintiff's characterizations thereof.

## THE PLAN

24. The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A) and a "defined contribution plan" within the meaning of 29 U.S.C. § 1002(34), covering all eligible current and former employees of Lowe's Corp. and its subsidiaries, including Plaintiff. The Plan is a qualified plan under 26 U.S.C. § 401, and is of the type commonly referred to as a "401(k) plan."

**ANSWER TO PARAGRAPH 24:** Paragraph 24 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 24 and rely upon the statutory provisions referenced therein to speak for themselves, rather than on Plaintiff's characterizations thereof, except that the Lowe's Defendants admit that Plaintiff is a participant in the Plan.

25.     As of the end of 2016 (the most recent calendar year for which Plan information is available through the Plan's Form 5500 filings with the Department of Labor), the Plan had more than 262,000 participants and more than $5.2 billion in assets, consisting of approximately $2.65 billion in Lowe's Corp. stock and approximately $2.61 billion in pooled investment vehicles.

**ANSWER TO PARAGRAPH 25:** The Lowe's Defendants deny the allegations in paragraph 25 of the Amended Complaint, which appear to summarize the contents of the Plan's 2016 Form 5500, and rely on the referenced Form 5500 to speak for itself, rather than on Plaintiff's characterization or summary thereof. The Lowe's Defendants admit that the Plan's 2016 Form 5500 states that the Plan had more than 262,000 participants and that the Plan's 2016 Schedule H states that the Plan had approximately $5.2 billion in assets at the end of 2016, of which approximately $2.66 billion was invested in employer securities and approximately $2.55 billion was invested in common or collective trusts. Except as expressly admitted, the Lowe's Defendants deny the remaining allegations in paragraph 25.

26.     Among the pooled investments, the amount invested in the Hewitt Growth Fund as of year-end 2016 was $1,082,100,276. This was more than six times the amount invested in the next largest fund ($177,093,609), a target date fund from Vanguard.[6]

**ANSWER TO PARAGRAPH 26:** The Lowe's Defendants deny the allegations in paragraph 26 of the Amended Complaint, which appear to summarize the Plan's 2016 Form 5500, and rely on the referenced Form 5500 to speak for itself, rather than on Plaintiff's characterization or summary thereof. The Lowe's Defendants admit that the Plan's 2016 Form 5500 states that as of December 31, 2016, the Plan had $1,082,100,276 invested in the

---

[6] This Vanguard fund is one of a series of Vanguard target-date funds in the Plan.

Aon Hewitt Growth Fund, and $177,093,609 invested in the Vanguard Target 2025 Retirement Trust Plus, and that there were multiple Vanguard target-date funds in the Plan. Except as expressly admitted, the Lowe's Defendants deny the allegations in paragraph 26 and footnote 6.

27.     The Hewitt Funds and Vanguard target-date funds are the only pooled investment options in the Plan, other than a low-yielding capital preservation option.

**ANSWER TO PARAGRAPH 27:** The Lowe's Defendants admit that the Plan's pooled investment options include the Aon Hewitt Growth Fund, the Aon Hewitt Income Fund, the Aon Hewitt Inflation Strategy Fund, twelve Vanguard target-date funds, and a capital preservation option. The Lowe's Defendants deny the remaining allegations in paragraph 27.

## ERISA FIDUCIARY DUTIES

28.     ERISA recognizes "that the continued well-being and security of millions of employees and their dependents are directly affected by [retirement] plans." 29 U.S.C. § 1001(a). Thus, "[t]he principal object of the statute is to protect plan participants and beneficiaries." *Boggs v. Boggs*, 520 U.S. 833, 845 (1997) (citation omitted). The "crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators" and "ERISA was designed to prevent these abuses." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 n.8 (1985) (citing extensive legislative history).

**ANSWER TO PARAGRAPH 28:** Paragraph 28 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 28, except to admit that Plaintiff purports to quote, paraphrase, and/or cite a statutory provision, *Boggs v. Boggs*, 520 U.S. 833, 845 (1997), and *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 n.8 (1985), but the

Lowe's Defendants rely on the statutory provision and judicial decisions to speak for themselves, rather than on the Plaintiff's characterization thereof.

29. To protect plan participants, ERISA incorporates the twin fiduciary duties of loyalty and prudence. 29 U.S.C. § 1104(a)(1). These fiduciary duties are the "highest known to law." *Tatum v. RJR Pens. Invest. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014) (citation and quotation marks omitted).

**ANSWER TO PARAGRAPH 29:** Paragraph 29 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 29 except to admit that Plaintiff purports to quote, paraphrase, and/or cite 29 U.S.C. § 1104(a)(1) and *Tatum v. RJR Pens. Invest. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014), but the Lowe's Defendants rely on the statutory provision and judicial decision to speak for themselves, rather than on Plaintiff's characterization thereof.

30. The duty of loyalty requires fiduciaries to act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), with an "eye single" to the interests of such participants and beneficiaries. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000). "A decision to make an investment may not be influenced by [other] factors unless the investment, when judged solely on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan." Dep't of Labor ERISA Adv. Op. 88-16A, 1988 WL 222716, at *3 (Dec. 19, 1988).

**ANSWER TO PARAGRAPH 30:** Paragraph 30 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 30 except to admit that Plaintiff

purports to quote, paraphrase, and/or cite 29 U.S.C. § 1104(a)(1), *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000), and a Department of Labor advisory opinion, but the Lowe's Defendants rely on the statutory provision, judicial decision, and advisory opinion to speak for themselves, rather than on Plaintiff's characterization thereof.

31.     Therefore, a plan fiduciary cannot, consistent with the duty of loyalty, take into account its own business interests when making investment or administrative decisions concerning the plan. "A fiduciary with a conflict of interest must act as if he is 'free' of such a conflict. 'Free' is an absolute. There is no balancing of interests; ERISA commands undivided loyalty to the plan participants." *Bedrick ex rel. Humrickhouse v. Travelers Ins. Co.*, 93 F.3d 149, 154 (4th Cir. 1996).

**ANSWER TO PARAGRAPH 31:**  Paragraph 31 of the Amended Complaint states conclusions of law to which no response is required.  If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 31 except to admit that Plaintiff purports to quote, paraphrase, and/or cite *Bedrick ex rel. Humrickhouse v. Travelers Ins. Co.*, 93 F.3d 149, 154 (4th Cir. 1996), but the Lowe's Defendants rely on the judicial decision to speak for itself, rather than on Plaintiff's characterization thereof.

32.     The duty of prudence requires fiduciaries to exercise the "care, skill, prudence, and diligence" that a prudent person would utilize in managing a similar plan." 29 U.S.C. § 1104(a)(1)(B). This is not a lay person standard, but instead "requires expertise in a variety of areas, such as investments." Dep't of Labor, *Meeting Your Fiduciary Responsibilities* (Sept. 2017),  at 2, *available at* https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/publications/meeting-your-fiduciary-responsibilities.pdf.

**ANSWER TO PARAGRAPH 32:** Paragraph 32 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations of paragraph 32 except to admit that Plaintiff purports to quote, paraphrase, and/or cite 29 U.S.C. § 1104(a)(1)(B) and a Department of Labor publication, but the Lowe's Defendants rely on the statutory provision and publication to speak for themselves, rather than on Plaintiff's characterization thereof.

33. The duty of prudence applies to the initial selection of a plan's investment options, and also entails a "continuing duty to monitor [plan] investments and remove imprudent ones." *Tibble*, 135 S. Ct. at 1828.

**ANSWER TO PARAGRAPH 33:** Paragraph 33 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations of paragraph 33 except to admit that Plaintiff purports to quote, paraphrase, and/or cite *Tibble*, 135 S. Ct. at 1828, but the Lowe's Defendants rely on the judicial decision to speak for itself, rather than on Plaintiff's characterization thereof.

34. When deciding whether to add, retain, or remove a plan investment option, the duty of prudence requires a "thorough and impartial investigation and analysis." *Tatum v. R.J. Reynolds Tobacco, Co.*, 926 F. Supp. 2d 648, 674 (M.D.N.C. 2013), *aff'd in relevant part, vacated and rev'd on other grounds sub nom, Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346 (4th Cir. 2014).

**ANSWER TO PARAGRAPH 34:** Paragraph 34 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations of paragraph 34 except to admit that Plaintiff

purports to quote, paraphrase, and/or cite *Tatum v. R.J. Reynolds Tobacco*, Co., 926 F. Supp. 2d 648, 674 (M.D.N.C. 2013), *aff'd in relevant part, vacated and rev'd on other grounds sub nom, Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346 (4th Cir. 2014), but the Lowe's Defendants rely on the judicial decision to speak for itself, rather than on Plaintiff's characterization thereof.

35.     Although a retirement plan sponsor (such as Lowe's Corp.) and plan committee (such as the Administrative Committee) may seek input from an investment consultant (such as Hewitt) with regard to the plan's investment options, this does not absolve the sponsor an committee of their fiduciary duties. In such a case, both the sponsor/committee and the consultant share these fiduciaries duties with respect to the Plan under 29 U.S.C. § 1104(a).

**ANSWER TO PARAGRAPH 35:**  Paragraph 35 of the Amended Complaint states conclusions of law to which no response is required.  If, however, a response is required, the Lowe's Defendants deny the allegations of paragraph 35 except to admit that Plaintiff purports to quote, paraphrase, and/or 29 U.S.C. § 1104(a), but the Lowe's Defendants rely on the statutory provision to speak for itself, rather than on Plaintiff's characterization thereof

### DEFENDANTS' MISMANAGEMENT OF THE PLAN

I.     HEWITT'S DEVELOPMENT AND SELF-SERVING PROMOTION OF ITS OWN FUNDS

36.     In 2011, Hewitt was the largest investment consultant in the world.[7] Hewitt owed its top position in 2011 to the 2010 merger of three previously unaffiliated firms:

---

[7] Tim Jenkinson, et al., *Picking Winners? Investment Consultants' Recommendations of Fund Managers*, 71 J. Fin. 2333, 2334 (Oct. 2016) ("*Picking Winners*") (citing PENSIONS & INVESTMENTS, *Consultants Directory 2011* (Nov. 28, 2011), *available at* http://researchcenter.pionline.com/rankings/consultant/specialreports/aua?year=2011.

EnnisKnupp, Hewitt Associates, and Aon Investment Consulting.[8] At the time of the merger, industry observers and plan sponsors questioned whether the combined firm could deliver the same independent, unbiased investment advice associated with its predecessor firms.[9] As the facts of this case demonstrate, these concerns turned out to be prescient.

**ANSWER TO PARAGRAPH 36:** The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 36 and footnotes 7, 8, and 9 of the Amended Complaint and therefore deny them. To the extent that the Plaintiff purports to summarize, paraphrase, and/or cite certain articles, the Lowe's Defendants rely on the articles to speak for themselves, rather than on Plaintiff's characterization thereof.

37.     Following the merger, Hewitt aggressively pursued new product development, in an effort to expand its business. Among the products that Hewitt developed was a set of proprietary collective investment trusts that were marketed to defined contribution plans. These proprietary funds were an entirely new venture for Hewitt, as it had never previously developed its own set of funds for defined contribution plans and historically had limited its role to advising clients regarding funds offered by other companies.

---

[8] *See* PENSIONS & INVESTMENTS, *Consultants Directory 2009* (Nov. 30, 2009), *available at* http://researchcenter.pionline.com/rankings/consultant/specialreports/aua?year=2009.

[9] *See* William P. Barrett, *Is "Conflict-Free" EnnisKnupp Selling Its Soul*, FORBES (Aug. 23, 2010), *available at* https://www.forbes.com/2010/08/23/ennisknupp-aon-hewitt-pension-consultant- personal-finance-conflict-of-interest.html#58b01f001160; William P. Barrett, *EnnisKnupp Drinks the Kool-Aid*, Forbes (Sept. 2, 2010), *available at* https://www.forbes.com/sites/williampbarrett/2010/09/02/ennisknupp-ends-decades-of-conflict-free-pension- dvice/#45bc59b56d0e ("Drinks the Kool-Aid") Douglas Appell, *Hewitt EnnisKnupp still suffers merger pains*, Pensions & Investments (Apr. 2, 2012), *available at* http://www.pionline.com/article/20120402/PRINT/304029984/hewitt-ennisknupp-still-suffers-merger-pains ("*Merger Pains*").

**ANSWER TO PARAGRAPH 37:** The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 37 of the Amended Complaint and therefore deny them.

38.     Although Hewitt continues to market itself as an honest broker that provides "independent" and objective advice to its consulting clients, *see supra* at 3 & n.3, it has allowed its own self-interest to seep into that advice. Specifically, Hewitt has recommended the Hewitt Funds to its consulting clients, in an effort to leverage its existing business relationships, without regard to the merit of the Hewitt Funds and without giving proper consideration to whether existing or alternative options are better suited for the plans it advises.

**ANSWER TO PARAGRAPH 38:** Paragraph 38 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 38 and therefore deny them.

39.     It is reasonable to infer that Hewitt made a similar recommendation to Lowe's. As an investment consultant to the Plan, Hewitt regularly consulted with Lowe's regarding the investment options in the Plan, and within two years of the launch of the Hewitt Funds, those investment options were substantially overhauled, three Hewitt Funds were added to the Plan (effective October 1, 2015), and over $1 billion was transferred into the Hewitt Growth Fund. As discussed below, very few plan sponsors adopted Hewitt Funds for their plans, and those that did were Hewitt clients.

**ANSWER TO PARAGRAPH 39:** The Lowe's Defendants deny the allegations in the first two sentences of paragraph 39 of the Amended Complaint except to admit that Aon

Hewitt provided services regarding the Plan's investment options, that the Aon Hewitt Growth Fund, the Aon Hewitt Income Fund, and the Aon Hewitt Inflation Strategy Fund were added to the Plan's investment lineup in 2015, and that, in 2015, the Plan invested more than $1 billion in the Aon Hewitt Growth Fund. The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in the last sentence of paragraph 39 and therefore deny them.

## II. DEFENDANTS' IMPRUDENT ADOPTION OF THE HEWITT GROWTH FUND AND TRANSFER OF OVER $1 BILLION IN PLAN ASSETS INTO THE FUND

40. The Plan's investment in two of the Hewitt Funds was relatively modest and did not involve major changes to the Plan lineup. *See supra* at n.4. However, with respect to the third fund—the Hewitt Growth Fund—Defendants caused the Plan to make a massive investment that fundamentally changed the character of the Plan.

**ANSWER TO PARAGRAPH 40:** The Lowe's Defendants deny the allegations in paragraph 40 of the Amended Complaint, except that the Lowe's Defendants admit that the Plan invested more assets in the Aon Hewitt Growth Fund than in the Aon Hewitt Income Fund or the Aon Hewitt Inflation Strategy Fund.

41. When the Hewitt Growth Fund was added to the Plan, Lowe's eliminated eight existing funds from the Plan's investment menu and transferred all of those funds' assets to the Growth Fund. This represented a staggering transfer of over $1 billion of Plan assets, constituting nearly half of all of the Plan's assets in pooled investment products.

**ANSWER TO PARAGRAPH 41:** The Lowe's Defendants deny the allegations in paragraph 41 of the Amended Complaint, except that the Lowe's Defendants admit that eight funds were removed from the Plan's investment lineup in 2015, that assets that had been

invested in those funds were invested in the Aon Hewitt Growth Fund, and that the investment in the Aon Hewitt Growth Fund was more than $1 billion in 2015.

42. A prudent fiduciary acting in the best interest of Plan participants would not have undertaken this restructuring and transferred the Plan's assets from these previously-existing funds into the Hewitt Growth Fund.

**ANSWER TO PARAGRAPH 42:** Paragraph 42 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 42.

### *The Removed Funds*

43. The eight funds that were removed from the Plan in favor of the Growth Fund were the Vanguard Institutional Index Fund, T. Rowe Price Institutional Mid-Cap Equity Growth Fund, American Funds New Economy Fund, Eagle Small Cap Growth Fund, T. Rowe Price Small-Cap Value Fund, American Funds EuroPacific Growth Fund, Diamond Hill Value Account, and T. Rowe Price Mid-Cap Value Fund Account (collectively, the "Removed Funds").

**ANSWER TO PARAGRAPH 43:** The Lowe's Defendants deny the allegations in paragraph 43 of the Amended Complaint, except that the Lowe's Defendants admit that funds bearing the names listed in paragraph 43 were removed from the Plan's investment lineup in 2015.

44. The Removed Funds constituted a diversified set of investment options that allowed participants to choose between large cap, mid cap, small cap, and international stocks, while further offering "growth" and "value" style options within the large, mid, and small cap asset classes. Taken together, the Removed Funds allowed participants to customize

their asset allocation and risk profile depending upon their investment timeframe, financial goals, risk tolerance, and individualized assessments of which asset classes offered the best potential for investment success.

**ANSWER TO PARAGRAPH 44:** The Lowe's Defendants deny the allegations in the first sentence of paragraph 44 of the Amended Complaint, except that the Lowe's Defendants admit that the funds referenced included equities with large cap, mid cap, small cap, and international asset classes, and that some equities offered "growth" or "value" investment styles. The Lowe's Defendants deny the allegations in the second sentence of paragraph 44, except the Lowe's Defendants admit that Plan participants could allocate their investments among the funds referenced.

45.     Each of these options had a strong long-term track record of performance. The Plan's holdings in each fund as of the end of 2014 (the last calendar year before they were replaced), and the performance of each fund (in absolute terms and in relation to their benchmark) are shown below:

| Removed Investment Option | Total Assets Under Management (Before 2015 Plan change) | Launch Date | Plan Assets Held (as of Q4 2014) | Performance as of Q3 2015 (10-year) | Benchmark | Benchmark Performance as of Q3 2015 (10-year) |
|---|---|---|---|---|---|---|
| Vanguard Institutional Index Fund | $195 billion (as of Q2 2015) | July 1990 | $170 million | 6.80% | S&P 500 TR USD | 6.80% |
| T. Rowe Price Institutional Mid-Cap Equity Growth Fund | $31 billion (as of Q2 2015) | July 1996 | $260 million | 10.33% | Russell Mid Cap Growth TR USD | 8.09% |
| American Funds New Economy Fund | $16 billion (as of 5/31/2015) | December 1983 | $101 million | 8.73% | S&P 500 TR USD | 8.09% |

| Eagle Small Cap Growth Fund | $4 billion (as of 4/30/15) | May 1993 | $81 million | 8.43% | Russell 2000 Growth TR USD | 7.67% |
|---|---|---|---|---|---|---|
| T. Rowe Price Small-Cap Value | $9 billion (as of Q2 2015) | June 1988 | $46 million | 6.67% | Russell 2000 Value TR USD | 5.35% |
| American Funds Europacific Growth Fund | $120 billion (as of Q3 2015) | April 1984 | $127 million | 5.24% | MSCI ACWI Ex USA NR USD | 3.03% |
| Diamond Hill Value Account | $7 billion (as of Q4 2014) | June 2001 | $197 million | 7.69% | Russell 1000 TR USD | 6.95% |
| T. Rowe Price Mid-Cap Value Account | $15 billion (as of Q4 2014) | June 1996 | $175 million | 8.96% | Russell Mid Cap Value TR USD | 7.42% |

**ANSWER TO PARAGRAPH 45:** The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 45 of the Amended Complaint and therefore deny them, except that the Lowe's Defendants admit that, to the extent paragraph 45 purports to reference financial reporting of the listed funds, the Lowe's Defendants rely on such financial reporting to speak for itself, rather than the Plaintiff's characterization thereof.

46.     As reflected by this chart, the Removed Funds were established funds with positive long-term performance histories managed by experienced asset managers such as Vanguard, T. Rowe Price, and American Funds with decades of experience managing pooled investment products for retirement plans, with published, GIPS compliant[10] performance

---

[10] The Global Investment Performance Standards (GIPS) are a well-recognized and respected series of performance tracking and reporting standards designed to ensure fair and accurate representation of historical investment performance by asset managers that has been verified by a third party. Investopedia, *A Guide to Global Investment Performance Standards*, available at https://www.investopedia.com/articles/07/gips.asp (last accessed Apr. 26, 2018). A prudent fiduciary would not rely upon an asset manager's self-reported performance history if it was not GIPS compliant.

histories documenting the success of each of these products as well as their managers. At the time the Removed Funds were removed, they were meeting or exceeding their long-term benchmarks. There was no compelling reason to remove any of these funds from the Plan, and even if there were, the Hewitt Growth Fund was not a prudent replacement.

**ANSWER TO PARAGRAPH 46:** The Lowe's Defendants deny the allegations in the first and second sentences of paragraph 46 of the Amended Complaint, except that the Lowe's Defendants admit that some of the Removed Funds were managed by asset managers at financial companies with experience managing pooled investment products and that the Removed Funds had exceeded their benchmarks over various timeframes. The third sentence of paragraph 46 states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in the third sentence of paragraph 46. The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in the first sentence of footnote 10 and therefore deny them, except that the Lowe's Defendants admit that this sentence purports to paraphrase an internet publication, but the Lowe's Defendants rely on that publication to speak for itself rather than on Plaintiff's characterization thereof. The second sentence of footnote 10 contains conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in the second sentence of footnote 10.

47.     Moreover, the Removed Funds had a variety of different investment strategies (value, growth, etc.) and invested different asset classes (small cap, mid cap, etc.) in different markets (domestic and international). As a result, they were not susceptible to replacement by a single fund.

**ANSWER TO PARAGRAPH 47:** The Lowe's Defendants deny the allegations in paragraph 47 of the Amended Complaint, except that the Lowe's Defendants admit that the funds referenced had differing investment strategies, were in differing asset classes, and invested in domestic and international markets.

### *The Hewitt Growth Fund*

48.     The Hewitt Growth Fund was inferior to the package of funds it replaced, and should not have been selected to replace the Removed Funds for several reasons.

**ANSWER TO PARAGRAPH 48:** The Lowe's Defendants deny the allegations in paragraph 48 of the Amended Complaint.

49.     Unlike the Removed Funds, the Hewitt Growth Fund did not have a long-term (or even a medium-term) track record, as it was launched less than two years before it was adopted by the Plan. This alone should have disqualified it from consideration, as prudent fiduciaries generally will require a performance history of three or more years before considering an investment for a retirement plan. See supra at ¶ 7 & n.5. The lack of performance history was particularly problematic given the novelty and complexity of the strategy employed by the Hewitt Growth Fund, which required predictions about relative performance of various asset classes, identifying inefficiently priced asset classes, all while overseeing an array of investment managers. A prudent fiduciary would never include an option employing such a difficult strategy without a lengthy track record of success in accomplishing these complex tasks.

**ANSWER TO PARAGRAPH 49:** The Lowe's Defendants deny the allegations in the first sentence of paragraph 49 of the Amended Complaint, except that the Lowe's Defendants admit that the inception date of the Aon Hewitt Growth Fund was October 1,

2013.  The remainder of paragraph 49 states conclusions of law to which no response is required.  If, however, a response is required, the Lowe's Defendants deny the remaining allegations in paragraph 49.

50.     Moreover, over the course of its limited history, the Hewitt Growth Fund had performed poorly. At the time it was added to the Plan, it reported negative returns (-0.67%) from its inception in Q4 2013 through Q3 2015.[11] The Hewitt Growth Fund also was underperforming both of its stated benchmarks, the Russell Mid Cap and MSCI ACWI indexes, by -8.16% and -2.61%, respectively, as of Q3 2015.

**ANSWER TO PARAGRAPH 50:** The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 50 of the Amended Complaint concerning the performance of the Russell Mid Cap and MSCI ACWI indexes and therefore deny them.  The Lowe's Defendants deny the remaining allegations in paragraph 50.  The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in footnote 11 of the Amended Complaint and therefore deny them.

51.     To make matters worse, the Hewitt Growth Fund mismatched many of the funds it replaced.   The Removed Funds represented discrete asset classes and investment styles, and participants made active choices to invest in these funds. By replacing the eight Removed Funds with a one-size-fits-all option from Hewitt, and transferring participants' assets from the Removed Funds into the Hewitt Growth Fund, Defendants disturbed participants' investment choices and left them no other options in their existing investment styles. After the menu change, the Plan did not offer participants a pooled investment product

---

[11] By contrast, over the same period, the Removed Funds had a weighted average return of 7.30%.

that invested 100% of its assets in equities. The new menu stripped Plan participants of their ability customize their asset allocation and risk profile based upon their particular financial situation and risk tolerance.[12]

**ANSWER TO PARAGRAPH 51:**  The Lowe's Defendants admit that the Removed Funds were in differing asset classes and had differing investment strategies.  The Lowe's Defendants also admit that, after these funds were removed from the Plan's lineup in 2015, the Plan did not offer a pooled investment option that invested exclusively in equity securities. The Lowe's Defendants deny the remaining allegations in paragraph 51 of the Amended Complaint. The Lowe's Defendants deny the allegations in footnote 12, except to admit that the Aon Hewitt Growth Fund invested in a mix of equities with various asset classes and investment styles, and in bonds.

52.     The unpopularity of the Hewitt Growth Fund should have been another red flag. No other jumbo plan in the country (out of 786 with $1 billion in assets or more) included the Hewitt Growth Fund in its investment lineup, and only two plans of any size (out of more than 648,000 total) had adopted the Hewitt Growth Fund by the end of 2015. Thus, the Hewitt Growth Fund had a zero percent market penetration rate in the relevant jumbo plan market, and a miniscule 0.00003% penetration rate in the overall retirement plan marketplace.

**ANSWER TO PARAGRAPH 52:**  The Lowe's Defendants deny the allegations in the first sentence of paragraph 52 of the Amended Complaint.  The Lowe's Defendants lack

---

[12] The Hewitt Growth Fund invested in a mix of U.S. stocks, non-U.S. stocks, real estate, commodities, and high yield bonds. Hewitt did not invest in these asset classes according to fixed  percentages, widely varying the Fund's asset allocation over time as Hewitt saw fit. For example,  the allocation to high yield bonds has varied between 0.01% and 16.39%; the allocation to real  estate and commodities has varied from a high of 28.23% to a low of 9.40%; and the allocation to  foreign stocks has varied from 28.71% to 48.65%.

knowledge or information sufficient to form a belief regarding the truth of the remaining allegations of paragraph 52 and therefore deny them.

53. Finally, the Plan's stake in the Hewitt Growth Fund was out of proportion to any other investor. As of the end of 2015, total amount invested by all other investors in the Hewitt Growth Fund was only about $350 million. Thus, the Plan's holdings in the Hewitt Growth Fund (over $1 billion) were approximately three times the holdings of all other investors combined when this fund was added to the Plan. Prudent fiduciaries generally choose funds with much larger asset bases, and are loathe to taking anything approaching such a large stake in a fund (as a percentage of the fund's assets).

**ANSWER TO PARAGRAPH 53:** The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in the first three sentences of paragraph 53 of the Amended Complaint and therefore deny them, except the Lowe's Defendants admit that the Plan invested over $1 billion in assets in the Aon Hewitt Growth Fund by the end of 2015. The fourth sentence of paragraph 53 states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in fourth sentence of paragraph 53.

54. Based on these facts, it is reasonable to infer that the process that led to the selection of the Hewitt Growth Fund for the Plan, and the transfer of over $1 billion in assets to that fund from the Removed Funds, was imprudent and tainted by Hewitt's self-interest. Lowe's should have recognized that Hewitt had a conflict of interest in recommending this fund for the Plan, vigorously scrutinized the fund, and declined to adopt the fund or transfer assets into the fund. Both Hewitt and Lowe's are jointly responsible for the selection of this

fund for the Plan, and breached their fiduciary duties by including this fund in the Plan and transferring such a large amount of Plan assets into this fund.

**ANSWER TO PARAGRAPH 54:** Paragraph 54 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 54.

### III. Defendants' Imprudent Retention of the Hewitt Growth Fund in the Plan

55.     Since the Hewitt Growth Fund was added to the Plan, it has remained unpopular and has continued to underperform.[13]

**ANSWER TO PARAGRAPH 55:** The Lowe's Defendants deny the allegations in paragraph 55 and footnote 13 of the Amended Complaint.

56.     The Lowe's 401(k) Plan remains the only jumbo plan in the country (with at least $1 billion in assets) that has adopted the Hewitt Growth Fund. Moreover, despite Hewitt's efforts to market this fund to its consulting clients, the Hewitt Growth Fund has gained almost no additional traction in the overall fiduciary marketplace.[14]

**ANSWER TO PARAGRAPH 56:** The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 56 of the Amended Complaint and therefore deny them. The Lowe's Defendants deny the allegations in footnote 14 except to admit that footnote 14 purports to summarize certain

---

[13] This underperformance should have come as no surprise, given the experimental nature of the funds, their weak performance history leading up to their inclusion in the Plan, and Hewitt's overall lack of experience as a fund manager. Although Hewitt did have experience evaluating other fund managers as an investment consultant, that experience was distinct, and did not suggest that Hewitt would be a successful fund manager in its own right any more than picking players for a fantasy football league would suggest that one could make a great quarterback.

[14] The most recent Form 5500 filing for the Hewitt Growth Fund reflects that only four additional plans have adopted the Hewitt Growth Fund, bringing the total to six plans (other than the Lowe's Plan) out of approximately 648,000 plans.

information from a Form 5500 for the Aon Hewitt Growth Fund, but the Lowe's Defendants rely on that document to speak for itself rather than on Plaintiff's characterization thereof.

57.     The fund also has continued to perform abysmally. From Q4 2015 until Q1 2018, the Growth Fund continued to underperform its benchmarks. The Hewitt Growth Fund returned  11.99% (annualized) from Q4 2015 through Q1 2018, while the Russell Mid Cap and MSCI ACWI indexes (the fund's benchmarks) each returned 14.11% during the same period.

**ANSWER TO PARAGRAPH 57:** The Lowe's Defendants deny the allegations in paragraph 57 of the Amended Complaint, except that the Lowe's Defendants admit that the annualized return for the Aon Hewitt Growth Fund from Q4 2015 through Q1 2018 was approximately 11.99%.

58.     The Hewitt Growth Fund also has continued to underperform the Removed Funds.  From Q4 2015 through Q1 2018 the returns for every one of the Removed Funds exceeded the  11.99% return for Hewitt Growth Fund, as reflected by the chart below:

| Removed Investment Option | Performance Q4 2015 – Q1 2018 (annualized) |
|---|---|
| Vanguard Institutional Index Fund | 15.96%, |
| T. Rowe Price Institutional Mid-Cap Equity Growth Fund | 16.93% |
| American Funds New Economy Fund | 19.10% |
| Eagle Small Cap Growth Fund | 15.96% |
| T. Rowe Price Small-Cap Value | 17.13% |
| American Funds Europacific Growth Fund | 13.70% |

| Diamond Hill Value Account | 15.29% |
| T. Rowe Price Mid-Cap Value Account | 16.05% |

Five of the eight Removed Funds beat their benchmarks individually over this period, and the funds' collective weighted return of 16.15% also outperformed their weighted benchmark.

**ANSWER TO PARAGRAPH 58:** The Lowe's Defendants deny the allegations in the first sentence of paragraph 58 of the Amended Complaint. The Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in paragraph 58 and therefore deny them.

59. In spite of the Hewitt Growth Fund's continued underperformance and unpopularity, Defendants have continued to retain the Hewitt Growth Fund in the Plan. Defendants have not replaced the fund or transferred the Plan's assets in the fund to a more appropriate investment. This constitutes a separate and continuing breach of Defendants' fiduciary obligations under ERISA. In the face of such unambiguous and objective data, prudent and unbiased fiduciaries would not continue to hold the Hewitt Growth Fund.

**ANSWER TO PARAGRAPH 59:** The Lowe's Defendants deny the allegations in the first two sentences of paragraph 59 of the Amended Complaint except to admit that the Plan has offered the Aon Hewitt Growth Fund as an investment option since 2015. The remaining allegations in paragraph 59 state conclusions of law to which no response is required. If, however, a response, is required, the Lowe's Defendants deny the remaining allegations in paragraph 59.

**IV.     Losses to the Plan and Wrongful Profits to Hewitt**

60. As a result of Defendants' imprudent selection and retention of the Hewitt Growth Fund, and transfer of over $1 billion in Plan assets into that fund, the Plan has

35

suffered massive investment losses. If Defendants had not replaced the Removed Funds with the Hewitt Growth Fund, the Plan would have over $100 million more in assets than it does today. Defendants are jointly and severally liable to the Plan for these losses pursuant to 29 U.S.C. § 1109.

**ANSWER TO PARAGRAPH 60:** Paragraph 60 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 60.

61. While the Plan's retention of the Hewitt Growth Fund has been harmful to the Plan, it has been profitable for Hewitt. Hewitt has received substantial additional fees as a result of the Plan's $1 billion investment in this fund. In addition, Hewitt was able to leverage the Plan's investment in the Hewitt Growth Fund to prop up its other incipient funds, as the Growth Fund is a "fund of funds" that invests in other underlying Hewitt Funds.

**ANSWER TO PARAGRAPH 61:** The Lowe's Defendants deny the allegations in paragraph 61 of the Amended Complaint, except to admit that the Aon Hewitt Growth Fund invests in other underlying funds, including certain Aon Hewitt Funds.

62. In addition to restoring the Plan's losses, Hewitt is obligated to disgorge the profits that it received on account of its fiduciary breaches pursuant to 29 U.S.C. §§ 1109 and 1132(a)(3).

**ANSWER TO PARAGRAPH 62:** Paragraph 62 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 62.

## V. PLAINTIFF LACKED KNOWLEDGE OF DEFENDANTS' FIDUCIARY MISCONDUCT

63. Plaintiff did not have knowledge of all material facts (including, among other things, Hewitt's inexperience as a manager of funds for defined contribution plans; the importance of Hewitt's incipient funds to its new business strategy; Hewitt's conflicted role in recommending its own funds for the Plan as a supposedly "independent" investment consultant; the relative unpopularity of the Hewitt Growth Fund in the retirement plan marketplace and the investment marketplace overall; the disproportionate size of the Plan's investment in the Hewitt Growth Fund relative to other investors; the Plan's unique status as the only jumbo plan in the country with assets invested in the Hewitt Growth Fund; and the relative performance of the Removed Funds in relation to the Hewitt Growth Fund after they were removed from the Plan) necessary to understand that Defendants breached their fiduciary duties until shortly before this suit was filed. Further, Plaintiff did not have actual knowledge of the specifics of Defendants' decision-making and monitoring processes with respect to the Plan, because this information is solely within the possession of Defendants prior to discovery. For purposes of this Complaint, Plaintiff has drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

**ANSWER TO PARAGRAPH 63:** Paragraph 63 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 63 concerning Plaintiff's knowledge and therefore deny them. The Lowe's Defendants deny the remaining allegations in paragraph 63.

**CLASS ACTION ALLEGATIONS**

64.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to seek the remedies provided by 29 U.S.C. § 1109(a). In addition, 29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary to bring suit for injunctive or other equitable relief. Plaintiff seeks certification of this action as a class action pursuant to these statutory provisions and Fed. R. Civ. P. 23.

**ANSWER TO PARAGRAPH 64:** Paragraph 64 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 64 except to admit that Plaintiff has filed a putative class action.

65.     Plaintiff asserts his claims against Defendants on behalf of a class of participants and beneficiaries of the Plan defined as follows:[15]

> All participants and beneficiaries of the Lowe's 401(k) Plan whose Plan account balances were invested in the Hewitt Growth Fund at any time on or after October 1, 2015, excluding Defendants, any of their directors, and any officers or employees of Defendants with responsibility for the Plan's investment or administrative functions.

**ANSWER TO PARAGRAPH 65:** The Lowe's Defendants deny the allegations of paragraph 65 and footnote 15 of the Amended Complaint except to admit that the Plaintiff purports to assert claim on behalf of a class of Plan participants, but the Lowe's Defendants deny that Plaintiff has or can define a valid class or that this case may properly be certified as a class action.

66.     <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. During the putative class period, the Plan had over a quarter million

---

[15] Plaintiff reserves the right to propose other or additional classes or subclasses in his motion for class certification or subsequent pleadings in this action.

participants. A substantial portion of these class members are or were invested in the Hewitt Growth Fund.

**ANSWER TO PARAGRAPH 66:** Paragraph 66 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 66 except to admit that the Plan has over 250,000 participants, some of which have assets invested in the Aon Hewitt Growth Fund. The Lowe's Defendants deny that Plaintiff has or can define a valid class or that this case may properly be certified as a class action.

67. Typicality: Plaintiff's claims are typical of the Class members' claims. Like other Class members, Plaintiff participated in the Plan, was invested in the Hewitt Growth Fund, and has suffered injuries as a result of Defendants' mismanagement of the Plan. Defendants treated Plaintiff consistent with other Class members with regard to the Plan. Defendants managed the Plan as a single entity, and therefore Defendants' imprudent decisions with respect to the Hewitt Growth Fund affected all Class members similarly.

**ANSWER TO PARAGRAPH 67:** Paragraph 67 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 67 except to admit that Plaintiff is a participant in the Plan and has Plan assets invested in the Aon Hewitt Growth Fund. The Lowe's Defendants deny that Plaintiff has or can define a valid class or that this case may properly be certified as a class action.

68. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with the Class that he seeks to represent, and he has retained counsel experienced in complex class action litigation, including ERISA class

action litigation. Plaintiff does not have any conflict of interest with any Class members that would impair or impede his ability to represent other Class members.

**ANSWER TO PARAGRAPH 68:** Paragraph 68 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants lack knowledge or information sufficient to form a belief regarding the truth of Plaintiff's claims concerning the experience of his counsel and therefore deny them. The Lowe's Defendants deny the remaining allegations in paragraph 68 and deny that Plaintiff has or can define a valid class or that this case may properly be certified as a class action.

69. <u>Commonality</u>: Common questions of law and fact exist as to all Class members, and predominate over any questions solely affecting individual Class members, including but not limited to:

a) Whether Defendants are fiduciaries of the Plan, and the scope of their fiduciary duties;

b) Whether the Plan's fiduciaries breached their fiduciary duties under 29 U.S.C.

§ 1104 by engaging in the conduct described herein;

c) Whether the Plan's fiduciaries are additionally or alternatively liable, as co-fiduciaries, for the unlawful conduct described herein under 29 U.S.C. § 1105;

d) Whether Lowe's Corp. breached its duty to monitor other Plan fiduciaries;

e) The proper form of equitable and injunctive relief; and

f) The proper measure of monetary relief.

**ANSWER TO PARAGRAPH 69:** Paragraph 69 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations of paragraph 69 and deny that Plaintiff has or can define a valid class or that this case may properly be certified as a class action.

70.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

**ANSWER TO PARAGRAPH 70:** Paragraph 70 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations of paragraph 70 and deny that Plaintiff has or can define a valid class or that this case may properly be certified as a class action.

71.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as removal of the Hewitt Growth Fund from the Plan or removal of a Plan fiduciary, would be dispositive of non-party participants' interests. The accounting and restoration of Plan assets that would be required under 29 U.S.C. §§ 1109 and 1132 would be similarly dispositive of the interests of other Plan participants.

**ANSWER TO PARAGRAPH 71:** Paragraph 71 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the

Lowe's Defendants deny the allegations of paragraph 71 and deny that Plaintiff has or can define a valid class or that this case may properly be certified as a class action.

72.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all Class members. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendants by any Class members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

**ANSWER TO PARAGRAPH 72:** Paragraph 72 of the Amended Complaint states conclusions of law to which no response is required.  If, however, a response is required, the Lowe's Defendants deny the allegations of paragraph 72 and deny that Plaintiff has or can define a valid class or that this case may properly be certified as a class action.

## COUNT I

### Breach of Duties of Loyalty and Prudence 29 U.S.C. § 1104

73.     Plaintiff repeats and re-alleges Paragraphs 1 through 71 of the Amended Complaint as though  fully set forth herein.

**ANSWER TO PARAGRAPH 73:** The Lowe's Defendants reassert their responses to paragraphs 1 through 72 of the Amended Complaint above and incorporate the same as if fully set forth herein, and further incorporate their affirmative defenses in response thereto.

74.     Defendants are or were fiduciaries of the Plan under 29 U.S.C. § 1002(21) and/or § 1102(a)(1).

**ANSWER TO PARAGRAPH 74:** Paragraph 74 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 74.

75.     ERISA imposes strict fiduciary duties of loyalty and prudence upon Defendants in their administration of the Plan and their selection and monitoring of Plan investments. Section 404(a) of ERISA, 29 U.S.C. § 1104(a), provides:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

>    (A)     for the exclusive purpose of
>
>            (i)     providing benefits to participants and their beneficiaries; and
>
>            (ii)    defraying reasonable expenses of administering the plan; [and]
>
>    (B)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims . . . .

**ANSWER TO PARAGRAPH 75:** Paragraph 75 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 75 except to admit that Plaintiff purports to quote, paraphrase, and/or cite 29 U.S.C. § 1104(a), but the Lowe's Defendants rely on the statutory provision to speak for itself, rather than on Plaintiff's characterization thereof.

43

76.     These fiduciary duties are continuing in nature, and apply to both the selection of  investments for the Plan and the subsequent monitoring, retention, removal, and replacement of  those investment options. *Tibble*, 135 S. Ct. at 1828.

**ANSWER TO PARAGRAPH 76:**  Paragraph 76 of the Amended Complaint states conclusions of law to which no response is required.  If, however, a response is required, the Lowe's Defendants deny the allegations of paragraph 76 except to admit that Plaintiff purports to quote, paraphrase, and/or cite *Tibble*, 135 S. Ct. at 1828, but the Lowe's Defendants rely on the judicial decision to speak for itself, rather than on Plaintiff's characterization thereof.

77.     Defendants breached their fiduciary duties by selecting the Hewitt Growth Fund  for the Plan, transferring over $1 billion in assets into that fund from the Removed Funds, and retaining the Hewitt Growth Fund. This was neither prudent nor in the interest of Plan participants  and beneficiaries.

**ANSWER TO PARAGRAPH 77:**  Paragraph 77 of the Amended Complaint states conclusions of law to which no response is required.  If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 77.

78.     A prudent fiduciary acting solely in the interest of Plan participants and beneficiaries would not have selected the Hewitt Growth Fund, or mapped Plan assets into that  fund, given the fund's (1) limited track record; (2) poor performance history; (3) unpopularity  among other retirement plan fiduciaries; and (4) lack of investment from other investors; and (5)  other undesirable attributes.

**ANSWER TO PARAGRAPH 78:** Paragraph 78 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 78.

79. A prudent fiduciary acting solely in the interest of Plan participants and beneficiaries also would not have replaced the Removed Funds with the Hewitt Growth Fund, and transferred the assets in the Removed Funds to the Hewitt Growth Fund, given the overall superiority of the Removed Funds to the Hewitt Growth Fund, and the differences in investment styles and other characteristics between the Removed Funds and the Hewitt Growth Fund.

**ANSWER TO PARAGRAPH 79:** Paragraph 79 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 79.

80. Defendants compounded their fiduciary breaches, and committed separate and independent fiduciary breaches, by failing to appropriately monitor the Hewitt Growth Fund and retaining the Hewitt Growth Fund in the Plan despite its continuing underperformance, unpopularity, and undesirability.

**ANSWER TO PARAGRAPH 80:** Paragraph 80 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 80.

81. The process that led to the selection and retention of the Hewitt Growth Fund, and the transfer of Plan assets into that fund, was imprudent and tainted by Hewitt's self-interest. Lowe's failed to properly take account of Hewitt's conflicted role in recommending this fund for the Plan and failed to take proper steps to mitigate such conflict. This conflict

was exacerbated by the fact that Hewitt also advised Lowe's on executive compensation. A scrupulous and independent investigation (as required under these circumstances) would have revealed that the Hewitt Growth Fund was not an appropriate investment for the Plan. Indeed, even a basic investigation consistent with the ordinary standard of care would have revealed that the Hewitt Growth Fund was not an appropriate investment option, as no fiduciaries of similarly-sized plans included this fund in their plans.

**ANSWER TO PARAGRAPH 81:** Paragraph 81 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 81.

82. Defendants' fiduciary breaches resulted in significant losses to the Plan. Each Defendant is personally liable, and Defendants are jointly and severally liable, for these losses under 29 U.S.C. §§ 1109(a) and 1132(a)(2).

**ANSWER TO PARAGRAPH 82:** Paragraph 82 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 82.

83. Defendants' fiduciary breaches also resulted in wrongful profits to Hewitt, which Hewitt is obligated to disgorge to the under 29 U.S.C. §§ 1109(a), 1132 (a)(2), and 1132(a)(3).

**ANSWER TO PARAGRAPH 83:** Paragraph 83 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 83.

84.     In addition, Defendants are liable for injunctive relief, equitable relief, and other  appropriate relief, as provided by 29 U.S.C. §§ 1109(a), 1132 (a)(2), and 1132(a)(3), and  reasonable attorneys' fees and expenses as provided by 29 U.S.C. § 1132(g).

**ANSWER TO PARAGRAPH 84:**  Paragraph 84 of the Amended Complaint states conclusions of law to which no response is required.  If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 84.

85.     Each Defendant knowingly participated in each breach of the other Defendants,  knowing that such acts were a breach; enabled the other Defendants to commit breaches by failing  to lawfully discharge each Defendant's own duties; and knew of the breaches  by  the  other  Defendants and failed to make any reasonable and timely effort under the circumstances to remedy  the breaches. Accordingly, in addition to being directly liable for the foregoing breaches, each  Defendant is also derivatively liable to the Plan for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

**ANSWER TO PARAGRAPH 85:**  Paragraph 85 of the Amended Complaint states conclusions of law to which no response is required.  If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 85.

## COUNT II

### Failure to Monitor Fiduciaries

86.     Plaintiff repeats and re-alleges Paragraphs 1 through 84 of the Amended Complaint as though  fully set forth herein.

**ANSWER TO PARAGRAPH 86:**  The Lowe's Defendants reassert their responses to paragraphs 1 through 85 of the Amended Complaint above and incorporate the same as if fully set forth herein, and further incorporate their affirmative defenses in response thereto.

87.     Lowe's Corp., the Administrative Committee, the members of the Administrative Committee, and Hewitt were all fiduciaries of the Plan during the relevant period.

**ANSWER TO PARAGRAPH 87:** Paragraph 87 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 87.

88.     Lowe's Corp. appointed the members of Administrative Committee through its Board of Directors, and also had the authority to remove those Administrative Committee Members.

**ANSWER TO PARAGRAPH 88:** Paragraph 88 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 88.

89.     Lowe's Corp. also appointed Hewitt as the Plan's investment consultant (either directly or through the Administrative Committee), and had the authority to remove Hewitt as an investment consultant to the Plan.

**ANSWER TO PARAGRAPH 89:** Paragraph 89 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 89.

90.     Given its overall responsibility for the Plan as Plan sponsor, and its authority to appoint and remove the other fiduciaries of the Plan, Lowe's Corp. had a duty to monitor the performance of the other fiduciaries to ensure that they were performing their duties properly and in accordance with ERISA.

**ANSWER TO PARAGRAPH 90:** Paragraph 90 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 90.

91. As a monitoring fiduciary, Lowe's Corp. also had a duty to take prompt and effective action to protect the Plan and its participants and beneficiaries in the event that the monitored fiduciaries failed to properly and lawfully perform their fiduciary obligations.

**ANSWER TO PARAGRAPH 91:** Paragraph 91 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 91.

92. Lowe's Corp. breached its fiduciary monitoring duties by, among other things:

    a) Failing to appropriately monitor and evaluate the performance of the other Plan fiduciaries or have a system in place for doing so;

    b) Failing to monitor the process by which the Hewitt Growth Fund was selected and retained for the Plan, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein;

    c) Failing to remove fiduciaries whose performance was inadequate; and

    d) Ignoring Hewitt's conflicts of interest and granting Hewitt carte blanche to make self-interested investment recommendations.

**ANSWER TO PARAGRAPH 92:** Paragraph 92 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 92.

93.     As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars in investment losses.

**ANSWER TO PARAGRAPH 93:** Paragraph 93 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 93.

94.     Lowe's Corp. is liable for these losses and other appropriate relief as provided by 29 U.S.C. §§ 1109 and 1132, on account of its failure to appropriately monitor to the Plan's fiduciaries.

**ANSWER TO PARAGRAPH 94:** Paragraph 94 of the Amended Complaint states conclusions of law to which no response is required. If, however, a response is required, the Lowe's Defendants deny the allegations in paragraph 94.

## PRAYER FOR RELIEF

In response to Plaintiff's Prayer for Relief and each subpart thereof, the Lowe's Defendants deny that Plaintiff is entitled to any of the relief requested or to any relief whatsoever, deny any allegations therein, and request that Plaintiff's Amended Complaint be dismissed with prejudice.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Amended Complaint fails to state a claim or cause of action upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's claims are or may be barred, in whole or in part, by the applicable statutes of limitations or repose.

## THIRD DEFENSE

Plaintiff has failed to plead fraudulent concealment, necessary to toll the statute of limitations, with the requisite specificity.

## FOURTH DEFENSE

Plaintiff's putative class action claims are barred because Plaintiff cannot satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.

## FIFTH DEFENSE

Some or all of Plaintiff's claims are or may be barred by the doctrines of laches, waiver, release, estoppel, and/or ratification.

## SIXTH DEFENSE

Plaintiff's claims are barred because Plaintiff has not suffered any losses or damages caused by the Lowe's Defendants' alleged acts and omissions.

## SEVENTH DEFENSE

Plaintiff's claims for liability are barred in whole, or in part, by ERISA § 404(c), 29 U.S.C. § 1104(c), including because Plaintiff exercised independent control over his investment elections in the Plan.

## EIGHTH DEFENSE

Plaintiff's claims are barred to the extent he has caused and/or failed to mitigate any losses or damages.

## NINTH DEFENSE

Plaintiff's claims, and those of the members of the putative class, are barred in whole, or in part, because any loss suffered by Plaintiff and the putative class members was not

caused by the fault or wrongdoing of the Lowe's Defendants or persons or entities over which the Lowe's Defendants had responsibility or control.

## TENTH DEFENSE

Plaintiff's claims, and those of the members of the putative class, are barred because Plaintiff and the putative class members have, through their investment decisions, consented to the selection of investment options on the Plan investment menu.

## ELEVENTH DEFENSE

Plaintiff's claims are or may be barred, in whole or in part, by Plaintiff's lack of standing to assert his claims.

## TWELFTH DEFENSE

To the extent that any of Plaintiff's claims or any putative class members' claims are subject to the doctrine of set-off or recoupment, the amounts owed by Plaintiff or any putative class member must be set off against the alleged damages resulting from the Lowe's Defendants' actions.

## THIRTEENTH DEFENSE

Plaintiff's claims, and those of the members of the putative class, are barred in whole or in part against the Lowe's Defendants pursuant to ERISA § 405(d), 29 U.S.C. § 1105(d).

## FOURTEENTH DEFENSE

Plaintiff's claims, and those of the members of the putative class, are barred in whole or in part because the Lowe's Defendants' actions were both procedurally and objectively prudent and do not give rise to fiduciary liability under ERISA.

## **FIFTEENTH DEFENSE**

Plaintiff's claims or those of the putative class members are barred, in whole or in part, to the extent Plaintiff or the members of the putative class have covenanted not to sue on such claims, or have provided a release covering such claims.

## **RESERVATION OF DEFENSES**

The Lowe's Defendants reserve the right to assert any additional affirmative defenses and matters in avoidance that may be discovered or disclosed during the course of additional discovery and investigation.

Dated:  April 28, 2020                                        Respectfully submitted,

/s/ *Lars C. Golumbic*
Lars C. Golumbic
Sean C. Abouchedid
Andrew D. Salek-Raham
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: (202) 861-9383
Fax: (202) 659-4503
lgolumbic@groom.com
sabouchedid@groom.com
asalek-raham@groom.com

/s/ *Mark A. Nebrig*
Mark A. Nebrig
MOORE & VAN ALLEN PLLC
100 N. Tryon St. Ste. 4700
Charlotte, NC 28202
Telephone: (704) 331-3602
Fax: (704) 339-5974
marknebrig@mvalaw.com

*Attorneys for Lowe's Companies, Inc.,*
*the Administrative Committee of Lowe's*
*Companies, Inc., and the Individual*
*Defendants*