**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

| | |
|---|---|
| Benjamin Reetz, individually and as the representative of a class of similarly situated persons, and on behalf of the Lowe's 401(k) Plan,<br><br>        Plaintiff,<br><br>v.<br><br>Lowe's Companies, Inc., Administrative Committee of Lowe's Companies, Inc., and Aon Hewitt Investment Consulting, Inc.,<br><br>        Defendants. | Case No. 5:18-cv-00075-KDB-DCK |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT WITH LOWE'S DEFENDANTS**</u>

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................2

I.      PROCEDURAL HISTORY .........................................................................2

        A.  Pleadings and Motion to Dismiss ...............................................2

        B.  Discovery, Mediation, and Settlement........................................4

II.     OVERVIEW OF SETTLEMENT TERMS.......................................................4

        A.  The Settlement Class...................................................................4

        B.  Monetary Relief ..........................................................................5

        C.  Prospective Relief .......................................................................6

        D.  Release of Claims and Bar Order.................................................6

III.    PRELIMINARY APPROVAL OF THE SETTLEMENT....................................7

IV.     CLASS NOTICE AND REACTION TO THE SETTLEMENT ...........................8

V.      REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY ..........................9

ARGUMENT ....................................................................................................10

I.      STANDARD OF REVIEW .......................................................................10

II.     THE SETTLEMENT IS FAIR ..................................................................11

        A.  Posture of the Case......................................................................11

        B.  Extent of Discovery ....................................................................11

        C.  The Circumstances Surrounding the Settlement Negotiations ........12

        D.  Counsel's Experience in the Type of Case at Issue .........................12

III.    THE SETTLEMENT TERMS ARE ADEQUATE AND REASONABLE...............13

        A.  Relative Strength of Plaintiff's Case Against the Lowe's Defendants and
            Applicable Defenses ...............................................................14

        B.  Anticipated Duration and Expenses of Additional Litigation........................17

ii

       C.  The Degree of Opposition to the Settlement...................................................18

IV.    THE CLASS NOTICE WAS REASONABLE...................................................................22

V.    THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS..24

CONCLUSION.............................................................................................................24

# **TABLE OF AUTHORITIES**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
    2015 WL 4398475 (S.D. Ill. July 17, 2015) ........................................................18

*Andrus v. New York Life Ins. Co.*,
    No. 16-05698, Dkt. 83 (S.D.N.Y. June 15, 2017) ...............................................20

*Beach v. JPMorgan Chase Bank*,
    No. 1:17-cv-00563, Dkt. 232 (S.D.N.Y. Oct. 7, 2020)........................................20

*Berry v. Schulman*,
    807 F.3d 600 (4th Cir. 2015) ..............................................................................22

*Chrismon v. Pizza*,
    2020 WL 3790866 (E.D.N.C. July 7, 2020) ........................................................19

*Clark v. Duke Univ.*,
    2019 WL 2588029 (M.D.N.C. June 24, 2019) ..............................................10, 23

*Clark v. Duke Univ.*,
    2019 WL 2579201 (M.D.N.C. June 24, 2019) .....................................................20

*Clark v. Oasis Outsourcing Holdings Inc.*,
    No. 18-81101, Dkt. 23 (S.D. Fla. Dec. 20, 2018)................................................20

*Flinn v. FMC Corp.*,
    528 F.2d 1169 (4th Cir. 1975) ............................................................................11

*Gaston v. LexisNexis Risk Solutions, Inc.*,
    2021 WL 244807 (W.D.N.C. Jan. 25, 2021) ..................................................18, 23

*Gaston v. LexisNexis Risk Sols. Inc.*,
    2021 WL 2077812 (W.D.N.C. May 24, 2021) ..................................10, 11, 12, 13

*Herrera v. Charlotte Sch. of Law, LLC*,
    818 Fed. App'x. 165 (4th Cir. 2020) ....................................................................2

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Practices*,
    2018 WL 11203065 (E.D. Va. Oct. 9, 2018)........................................................2

*In re M&T Bank Corp. ERISA Litig.*,
    No. 1:16-cv-375, Dkt. 190 (W.D.N.Y. Sept. 3, 2020)..........................................20

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ...........................................................12, 19

*In re Mills Corp. Sec. Litig.*,
    265 F.R.D. 246 (E.D. Va. 2009) .................................................... *passim*

*In re Red Hat, Inc. Sec. Litig.*,
    2010 WL 2710517 (E.D.N.C. June 11, 2010) ......................................................14

*In re Serzone Prod. Liab. Litig.*,
    231 F.R.D. 221 (S.D.W. Va. 2005).......................................................................20

*Intravaia v. Nat'l Rural Elec. Coop. Ass'n*,
    No. 1:19-cv-00973, Dkt. No. 113 (E.D. Va. Feb. 2, 2021)....................................22

*Intravaia v. Nat'l Rural Elec. Coop. Ass'n*,
    No. 1:19-cv-00973, Dkt. No. 114 (E.D. Va. Feb. 25, 2021)................................20

*Karpik v. Huntington Bancshares Inc.*,
    2021 WL 757123 (S.D. Ohio Feb. 18, 2021).................................................13, 20

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
    352 F. Supp. 3d 499 (M.D.N.C. 2018) ................................................................21

*Krueger v. Ameriprise Fin., Inc.*,
    2015 WL 4246879 (D. Minn. July 13, 2015) .................................................18, 20

*Kruger v. Novant Health, Inc.*,
    2016 WL 6769054 (M.D.N.C. May 18, 2016) .....................................................23

*Kruger v. Novant Health, Inc.*,
    2016 WL 6769066 (M.D.N.C. Sept. 29, 2016).................................................19, 21

*Moreno v. Deutsche Bank Americas Holding Corp.*,
    2017 WL 3868803 (S.D.N.Y Sept. 5, 2017).........................................................12

*Mullane v. Central Hanover Bank and Trust Co.*,
    339 U.S. 306 (1950)............................................................................................23

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)............................................................................................22

*Pledger v. Reliance Trust Co.*,
    No. 1:15-cv-04444, Dkt. 37 (N.D. Ga. April 15, 2016)........................................16

*Pledger v. Reliance Trust Co.*,
 No. 1:15-cv-04444, Dkt. 280-1  (N.D. Ga. Oct. 12, 2020)....................................16

*Pledger v. Reliance Trust Co.*,
 No. 1:15-cv-04444, Dkt. 280-2  (N.D. Ga. Oct. 12, 2020)....................................16

*Pledger v. Reliance Tr. Co.*,
 2021 WL 2253497 (N.D. Ga. Mar. 8, 2021).........................................................17

*Robinson v. Carolina First Bank NA*,
 2019 WL 2591153 (D.S.C. June 21, 2019)...........................................................14

*Seaman v. Duke Univ.*,
 2018 WL 718961 (M.D.N.C. Jan. 4, 2018) ...........................................................18

*Sims v. BB&T Corp.*,
 2019 WL 1995314 (M.D.N.C. May 6, 2019) .....................................10, 13, 17, 23

*Sims v. BB&T Corp.*,
 2019 WL 1993519 (M.D.N.C. May 6, 2019) ..........................................20, 21, 22

*Skochin v. Genworth Fin., Inc.*,
 2020 WL 6532833 (E.D. Va. Nov. 5, 2020)....................................................19, 20

*Stevens v. SEI Invs. Co.*,
 2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ...........................................................20

*Tibble v. Edison Int'l*,
 2017 WL 3523737 (C.D. Cal. Aug. 16, 2017)........................................................18

*Tussey v. ABB, Inc.*,
 850 F.3d 951 (8th Cir. 2017) ................................................................................18

*Tussey v. ABB, Inc.*,
 2019 WL 3859763 (W.D. Mo. Aug. 16, 2019)......................................................20

*US Airline Pilots Ass'n v. Velez*,
 2016 WL 1615408 (W.D.N.C. Apr. 22, 2016) ......................................................16

*US Airline Pilots Ass'n v. Velez*,
 2016 WL 4698540 (W.D.N.C. Sept. 7, 2016) ...........................................11, 18, 19

*West v. Cont'l Auto., Inc.*,
 2018 WL 1146642 (W.D.N.C. Feb. 5, 2018) .............................................10, 18, 23

**Statutes, Rules and Regulations**

28 U.S.C. § 1715(d) .....................................................................................................9

29 U.S.C. § 1105(d) ...................................................................................................15

Prohibited Transaction Exemption 2003-39,
     68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ...........................................9

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................22

**Other Authorities**

Restatement (Third) of Trusts § 102 cmt. b(2) ...........................................................15

## INTRODUCTION

On June 9, 2021, this Court preliminarily approved the Settling Parties' Class Action Settlement Agreement, which resolves Plaintiff's class action claims against the Lowe's Defendants[1] under the Employee Retirement Income Security Act ("ERISA") relating to the Lowe's 401(k) Plan ("Plan") and the Aon Growth Fund. *See Dkt. 234*. The Court found on a preliminary basis that the terms of the partial Settlement are "fair, reasonable, and adequate, and within the range of possible approval," as well as in accordance with all applicable requirements of law, and approved the distribution of the Notices of Settlement as specified in the Settlement Agreement. *See id. at 2*.

The events following this order confirm that the Court's preliminary analysis was correct. First, an Independent Fiduciary reviewed the Settlement pursuant to Department of Labor ("DOL") regulations and independently determined that the Settlement terms are reasonable. *See Declaration of Kai Richter in Support of Plaintiff's Motion for Final Approval of Partial Class Action Settlement with Lowe's Defendants ("Third Richter Decl.") Ex. 1*. Among other things, the Independent Fiduciary found that (1) "[t]he Settlement is fair and balanced and . . . is advantageous to the Plan", (2) "[t]he terms of the release . . . are determined to be reasonable", (3) "[t]he Plan of Allocation is reasonable . . . and is cost effective as Participant Class Members will be funded directly into their Plan accounts and Former Participant Class Members will have the opportunity to elect a rollover or receive a direct cash payment", and (4) "[c]onsidering the work performed, the extensive defenses that were raised, the results achieved, and the litigation risk assumed by Class Counsel; . . . the requested attorneys' fees are reasonable." *Third Richter Decl. Ex. 1 at 5–6, 8–9*.

---

[1] The "Lowe's Defendants" or "Settling Defendants" refers to Lowe's Companies, Inc. ("Lowe's") and the Administrative Committee of Lowe's Companies, Inc. ("Administrative Committee").

1

Second, notice of the Settlement was provided to more than 74,000 class members, and in response only one objection was received. *See Third Richter Decl. ¶ 4 & Ex. 2.* The fact that 99.99% of class members voiced no concerns about the Settlement further demonstrates that the Settlement is fair and reasonable. *See Herrera v. Charlotte Sch. of Law, LLC*, 818 Fed. App'x. 165, 178 (4th Cir. 2020) (noting that district court did not abuse its discretion in finding that the "vast majority" approved of the settlement terms where only 4% of class filed objections); *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Practices*, 2018 WL 11203065, at *6 (E.D. Va. Oct. 9, 2018) ("A small number of objections and a low opt-out rate suggest that the proposed settlement is adequate."), *aff'd sub nom In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020) (citing *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 258 (E.D. Va. 2009)). Moreover, the lone objection that was received did not raise any issue with respect to the adequacy of the Settlement, and only pertained to Class Counsel's request for attorneys' fees. For the reasons discussed below, that objection should be overruled. Regardless, the Settlement is not conditioned upon approval of Class Counsel's attorneys' fees. *See Settlement Agreement, Dkt. 221-3, ¶ 7.1.*

Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement. This motion is unopposed by the Lowe's Defendants, and Defendant Aon Hewitt Investment Consulting, Inc. ("Aon") takes no position on the motion.

## **BACKGROUND**

### I. PROCEDURAL HISTORY[2]

#### A. **Pleadings and Motion to Dismiss**

Plaintiff filed this action on April 27, 2018. *Dkt. 1.* In his Class Action Complaint, Plaintiff

---

[2] The procedural history of this case was previously discussed in connection with Plaintiff's motion for preliminary approval (*Dkt. 221*) and motion for attorneys' fees, costs, and class representative service award (*Dkt. 249*). For ease of reference, Plaintiff has recounted that history here.

2

asserted claims for (1) breaches of the fiduciary duties of loyalty and prudence under 29 U.S.C. § 1104(a)(1); and (2) failure to monitor fiduciaries. *Dkt. 1*. In summary, Plaintiff alleged that Aon engaged in an imprudent and self-serving scheme to replace the Plan's eight existing equity investment options with a new and underperforming Growth Fund managed by Aon, and transferred over $1 billion to this fund, with the consent of the Lowe's Defendants. *Id. ¶ 1*.

The Lowe's Defendants moved to dismiss the Complaint on June 29, 2018 for failure to state a claim. *Dkt. 38*. On February 14, 2019, Magistrate Judge David Keesler recommended that the motion be denied. *Dkt. 54*. The Lowe's Defendants filed an objection, *Dkt. 55*, but on September 6, 2019, this Court entered an order largely adopting Judge Keesler's recommendation, *Dkt. 58*. The Court denied the motion as to Plaintiff's breach of fiduciary duty claim, *id. at 12*, and dismissed only the portion of Plaintiff's failure to monitor claim related to Lowe's alleged failure to monitor Aon, *id. at 16*.

Plaintiff filed a First Amended Complaint ("FAC") on March 23, 2020, adding as defendants the individual members of the Administrative Committee, while leaving the substance of Plaintiff's allegations unchanged. *Dkt. 84*. On October 29, 2020, Defendants stipulated to class certification, *Dkt. 94*, and the Court approved the stipulation on November 5, 2020, *Dkt. 97*.[3] As part of the same stipulation, Plaintiff agreed to dismiss the individual members of the Administrative Committee as defendants, and Lowe's agreed that it "will be responsible" for any judgment based on their acts or omissions. *Dkt. 94 at ¶ 2*.

---

[3] The Court's order was preliminary at the time it was issued, *Dkt. 97*, but automatically became final because no objections to class certification were received from the class after notice was provided to the class, *see Dkt. 181*.

### B. Discovery, Mediation, and Settlement

Following the Court's ruling on the motion to dismiss, the parties engaged in extensive discovery. In total, the parties produced more than 400,000 pages of documents. *See Declaration of Kai Richter in Support of Plaintiff's Motion for Preliminary Approval of Partial Class Action Settlement with Lowe's Defendants ("First Richter Decl."), Dkt. 221-1, ¶ 11.* Plaintiff also subpoenaed six third parties and received nearly 25,000 pages of documents in response. *Id. ¶ 12.* In addition, the parties have taken 17 depositions and have served expert reports (and/or rebuttal reports) from nine expert witnesses, including five experts retained by Plaintiff. *Id. ¶¶ 13–14.*

The parties engaged in an initial mediation session on November 12, 2020, but were unable to reach an agreement. *Id. ¶¶ 16–17.* Subsequently, the parties each moved for summary judgment on December 17, 2020, *see Dkt. 134, 137, 140,* and the Court denied the motions on February 12, 2021, *see Dkt. 198.* The Lowe's Defendants and Plaintiff then engaged in a second mediation on March 22, 2021, which ultimately resulted in a settlement between them shortly before trial was scheduled to begin. *First Richter Decl. ¶ 17.*

## II. OVERVIEW OF SETTLEMENT TERMS

### A. The Settlement Class

In granting preliminary approval of this partial Settlement, the Court preliminarily certified the following Settlement Class:

> All participants and beneficiaries of the Lowe's 401(k) Plan whose Plan account balances were invested in the Aon Growth Fund at any time on or after October 1, 2015, through the date of preliminary approval, excluding the Settling Defendants, any of their directors, and any officers or employees of the Settling Defendants with responsibility for the Plan's investment or administrative functions.

*Dkt. 234 ¶ 2.* This Settlement Class is consistent with the class previously certified by the Court. *Id.* (citing *Dkt. 97*). There are 74,724 Settlement Class Members. *See Declaration of Jeff Mitchell ("Mitchell Decl.") ¶ 9.*

4

### B. Monetary Relief

Under the Settlement, Lowe's will contribute a Gross Settlement Amount of $12,500,000 to a Qualified Settlement Fund ("Settlement Fund"). *Settlement Agreement, Dkt. 221-3, ¶¶ 1.30, 1.44, 4.2.* After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and class representative Service Award approved by the Court, the Net Settlement Amount will be distributed to Settlement Class members in accordance with the Plan of Allocation in the Settlement. *Id. ¶ 4.8.* Under the Plan of Allocation, the Settlement Administrator shall determine an Average Settlement Score for each Settlement Class Member. *Id. ¶ 5.1(a).* For purposes of making this determination, the Average Settlement Score shall be calculated based on the amount invested by each class member in the Aon Growth Fund at the beginning of each quarter during the Class Period. *Id.* The Settlement Administrator shall then determine the settlement payment for each class member by calculating each such class member's pro-rata share of the Net Settlement Fund based on his or her Average Settlement Score compared to the sum of the Average Settlement Scores for all Settlement Class Members. *Id. ¶ 5.1(b).*

The Plan accounts of Participant Class Members who are currently enrolled in the Plan will be automatically credited with their share of the Net Settlement Amount. *Id. ¶ 5.2(b).* Former Participant Class Members who no longer have a Plan account may elect to have their share of the Net Settlement Amount rolled over into an individual retirement account or other eligible employer plan by submitting a Former Participant Rollover Form. *Id. ¶ 5.3.* Any former participants who do not submit a Former Participant Rollover Form will receive their share via check. *Id ¶ 5.3(a)(ii).* Under no circumstances will any monies revert to Lowe's. Any checks that are uncashed after 120 days will revert to the Settlement Fund and will be used to defray administrative costs of the Plan. *Id. ¶ 5.6(b).*

### C.       Prospective Relief

The Settlement also provides for significant prospective relief. In particular, the Settling Parties have agreed to the following additional terms: (1) within twelve (12) months after the Settlement Effective Date, the Administrative Committee will issue an RFP for a delegated fiduciary investment manager for the Plan; (2) the Committee will engage an independent consulting firm (unrelated to Aon) with experience conducting similar RFPs to assist with the RFP process; (3) the candidates in the RFP process will be free to propose alternative investment options, investment strategies, and/or investment lineup structures to the Administrative Committee; and (4) as part of the process, the Administrative Committee will consider all options presented. *Id. ¶ 6.1.*

### D.       Release of Claims and Bar Order

In exchange for the relief provided by the Settlement, the Settlement Class will release the Lowe's Defendants and affiliated persons and entities as described in the Settlement Agreement (the "Released Parties") from all claims:

- That were asserted in the Action against the Settling Defendants or could have been asserted against the Settling Defendants, including but not limited to those based on (1) the selection, retention, or monitoring of the Aon Growth Fund, (2) the mapping of Plan assets to the Aon Growth Fund; (3) the selection, retention, or monitoring of Aon; (4) the performance, fees, and other characteristics of the Aon Growth Fund, (5) Aon Hewitt's performance or fees, or the services provided by Aon to the Plan; or (6) the restructuring or modification of the Plan's investment lineup;

- That would be barred by *res judicata* based on the Court's entry of the Final Approval Order;

- That arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

- That arise from the approval by the Independent Fiduciary of the Settlement Agreement.

*Id. ¶¶ 1.38, 8.1(a).* Claims against Aon are not released by the Settlement. *Id. ¶¶ 1.38, 8.5.* Likewise, claims to enforce the Settlement Agreement, and claims for individual vested benefits that are due under the terms of the Plan, also are not released. *Id.*

In addition, the Settlement calls for entry of a Bar Order to address potential claims for contribution or indemnity between the Settling Defendants and Aon. *Id. ¶ 2.3(g).* After giving the proposed Bar Order careful consideration, this Court entered the Bar Order on June 2, 2021. *See Dkt. 231.* The Bar Order precludes Aon, the Settling Defendants, Released Parties, and any person purporting to act on their behalf from asserting any Barred Claims against Aon, the Settling Defendants, and Released Parties in this Action or in any other forum, action or proceeding. *See Dkt. 231 at ¶¶ 1–2; see also Dkt. 234 at 5.* The Bar Order also provides that any judgment entered against Aon in the Action will be subject to a judgment reduction credit based on what the Court ultimately determines to be the "proportionate share of fault" of Aon and the Settling Defendants. *Dkt. 231 at ¶ 3.*

## III. PRELIMINARY APPROVAL OF THE SETTLEMENT

On June 9, 2021 the Court issued an Order granting preliminary approval of the Settlement. *Dkt. 234.* In its Order, the Court preliminarily certified the Settlement Class for Settlement purposes and found that the terms of the partial Settlement are "fair, reasonable, and adequate, and within the range of possible approval," as well as in accordance with all applicable requirements of law. *Id. at 2.* The Court therefore approved the distribution of the Notices of Settlement as specified in the Settlement Agreement. *Id.* In addition, the Court appointed Analytics Consulting LLC ("Analytics") to serve as the Settlement Administrator, distribute the Notices, and carry out the other duties specified in the Settlement Agreement. *Id. at 2–3.*

## IV.    CLASS NOTICE AND REACTION TO THE SETTLEMENT

Pursuant to the Court's Order preliminarily approving the Settlement, Analytics mailed Notices of Settlement to each of the Settlement Class members identified by the Plan's recordkeeper. *See Mitchell Decl. ¶ 9.* In total, 74,724 Notices were mailed. *Id.*

Prior to sending these Notices, Analytics cross-referenced the addresses on the class list with the United States Postal Service National Change of Address Database. *Id. ¶ 8.* In the event that any Notices were returned, Analytics re-mailed the Notice to any forwarding address that was provided, and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address. *Id. ¶¶ 11–12.* As a result, the notice program was very effective. Out of 74,724 Notices that were mailed, only 0.62% were ultimately undeliverable despite these efforts. *Id. ¶ 13.*

If any Class Members desired further information, Analytics established a Settlement Website at www.lowes401kclassaction.com. *Id. ¶ 14.* Among other things, the Settlement Website includes: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Dates" page, each containing clear notice of applicable deadlines; (3) case and settlement documents for download (including, among other things, the Settlement Agreement, Notices of Settlement, Former Participant Rollover Form, First Amended Complaint ("FAC"), Defendants' Answers to the FAC, the Court's Preliminary Approval Order, and Plaintiff's Motion for Approval of Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Service Award and related documents); (4) contact information for Class Counsel and the Lowe's Defendants' Counsel; and (5) email, phone, and U.S. mail contact information for Analytics. *Id.* In addition, Analytics created and maintained a toll-free telephone support line (1-877-319-3102) as a resource for Class Members seeking

information about the Settlement. *Id.* ¶ *15*. This telephone number was referenced in the Notices, and also appears on the Settlement Website. *Id.*

The deadline to submit objections to the Settlement was August 12, 2021. *See Dkt. 234 at* ¶ *8*. As of this filing, only one individual out of more than 74,000 class members has lodged an objection. *See Third Richter Decl. ¶ 4; Mitchell Decl. ¶ 16.*

Additionally, on June 7, 2021, on behalf of the Lowe's Defendants, Analytics sent the notices required by the Class Action Fairness Act, 28 U.S.C. § 1715, to the appropriate federal and state officials. *Mitchell Decl. ¶ 6.* No objections have been received in response to the CAFA notices.[4]

## V.  REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

Pursuant to Paragraph 2.2 of the Settlement Agreement and applicable ERISA regulations,[5] the partial Settlement was submitted to an Independent Fiduciary (James P. Carroll of Carroll Services, LLC) for review following the Court's Preliminary Approval Order. *See Third Richter Decl. Ex. 1*. After reviewing the Settlement and numerous case documents, and interviewing counsel for each of the Settling Parties, the Independent Fiduciary concluded that (1) "[t]he Settlement is fair and balanced and . . . is advantageous to the Plan", (2) "[t]he terms of the release . . . are determined to be reasonable", (3) "[t]he Plan of Allocation is reasonable . . . and is cost effective as Participant Class Members will be funded directly into their Plan accounts and Former Participant Class Members will have the opportunity to elect a rollover or receive a direct cash payment", and (4) "[c]onsidering the work performed, the extensive defenses that were raised, the

---

[4] A settlement cannot be finally approved by the Court under CAFA until at least 90 days after the appropriate state and federal officials have been served (i.e., September 6, 2021). 28 U.S.C. § 1715(d).

[5] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

results achieved, and the litigation risk assumed by Class Counsel; . . . the requested attorneys' fees are reasonable." *Third Richter Decl. Ex. 1 at 5–6, 8–9*. The Independent Fiduciary therefore approved and authorized the Settlement on behalf of the Plan, and indicated that it has no objection to any aspect of the Settlement. *Third Richter Decl. ¶ 3 & Ex. 1 at 12-23*.

## ARGUMENT

### I.   STANDARD OF REVIEW

"It has long been clear that the law favors settlement." *Sims v. BB&T Corp.*, 2019 WL 1995314, at *3 (M.D.N.C. May 6, 2019) (*"Sims I"*) (quoting *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992)). "This is particularly true in class actions." *Id.* (citations omitted); *Clark v. Duke Univ.*, 2019 WL 2588029, at *4 (M.D.N.C. June 24, 2019) (*"Clark I"*); *West v. Cont'l Auto., Inc.*, 2018 WL 1146642, at *3 (W.D.N.C. Feb. 5, 2018). Under Rule 23(e)(1) the Court will approve a class action settlement if it is "fair, reasonable, and adequate." *Gaston v. LexisNexis Risk Sols. Inc.*, 2021 WL 2077812, at *5 (W.D.N.C. May 24, 2021) (*"Gaston II"*) (quoting Fed. R. Civ. P. 23(e)(1)).

"The Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Clark I*, 2019 WL 2588029, at *4 (quotation marks and citations omitted); *Gaston II*, 2021 WL 2077812, at *5 (citing *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)). This is the same standard that the Court applied in preliminarily approving the Settlement. *See Dkt. 234*. In so doing, the Court found that "the Settlement Agreement is fair, reasonable, and adequate." *Id. at 2*. There is no reason to reach a different conclusion on final approval, especially since (1) the Settlement has now been independently reviewed and approved by an Independent Fiduciary, and (2) only a single class member has objected to the Settlement.

## II.     THE SETTLEMENT IS FAIR

"The Fourth Circuit has set forth the factors to be used in analyzing a class settlement for fairness: (1) the posture of the case at the time the proposed settlement was reached, (2) the extent of discovery conducted, (3) the circumstances surrounding the settlement negotiations, and (4) counsel's experience in the type of case at issue." *Gaston II*, 2021 WL 2077812, at *5 (citing *Jiffy Lube*, 927 F.3d at 158–59). Here, each of these four factors indicate the Settlement is fair.

### A.     Posture of the Case

At the time of settlement, the Settling Parties were only a few weeks from trial. The mature posture of this case demonstrates that it was ripe for settlement. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("The fact that all discovery has been completed and the cause is ready for trial is important, since it ordinarily assures sufficient development of the facts to permit a reasonable judgment on the possible merits of the case."); *US Airline Pilots Ass'n v. Velez*, 2016 WL 4698540, at *4 (W.D.N.C. Sept. 7, 2016) (*"Velez  II"*) ("[A]fter numerous . . . years of litigation, the Parties are well aware of the important facts and the strength of their cases[.]").

### B.     Extent of Discovery

The extensive discovery that was undertaken also supports a finding of fairness. *See Gaston II*, 2021 WL 2077812, at *5 (finding that the "extensive discovery and motion practice in this case provided each side with the additional insight to evaluate the merits and laid the groundwork for the arm's-length negotiations that resulted in the settlement"). As discussed above, Plaintiff "obtained substantial discovery in this case sufficient to support [his] position that the settlement is the best and most appropriate means for resolving [these claims]." *See id.* Before the case was even filed, Class Counsel conducted a thorough investigation, including submitting FOIA requests to the Department of Labor. *See First Richter Decl. ¶ 9.* Once the litigation began, Class Counsel reviewed hundreds of thousands of pages of documents, took several depositions, and

11

subpoenaed multiple third parties. *See supra* at 4. In addition, Class Counsel retained multiple experts, reviewed their reports, and also engaged in discovery of Defendants' experts. *See id.* "Developing a case to this extent 'clarifie[d] plaintiffs' previous understanding of the strength and weaknesses of their claims and afford[ed] plaintiff[] the ability to confirm the fairness, reasonableness, and adequacy of the proposed partial settlement.' " *In re The Mills Corp.*, 265 F.R.D. at 254–55 (quoting *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001)).

## C.     The Circumstances Surrounding the Settlement Negotiations

"Where a settlement is the result of genuine arm's-length negotiations, there is a presumption that it is fair." *Gaston II*, 2021 WL 2077812, at *5 (collecting cases). That is exactly the situation presented here. The record reflects that counsel for the Settling Parties engaged in extensive arm's length negotiations over multiple months with an experienced, independent mediator. *First Richter Decl. ¶¶ 16–17.* In addition, counsel for both sides are well-respected members of the ERISA class action bar, which "further minimizes concerns that the [Settling Parties] colluded to the detriment of the class's interests." *MicroStrategy*, 148 F. Supp. 2d at 665. The Court specifically noted in its Preliminary Approval Order that "the Settlement Agreement has been negotiated in good faith at arm's length between experienced attorneys familiar with the legal and factual issues of this case with the assistance of an experienced mediator[.]" *Dkt. 234 at ¶ 1.* This further supports approval of the Settlement.

## D.     Counsel's Experience in the Type of Case at Issue

Finally, "the opinion of experienced and informed counsel in favor of settlement is afforded due consideration in determining whether a class settlement is fair and adequate." *Gaston II*, 2021 WL 2077812, at *5 (collecting cases). Here, Class Counsel are "experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans[.]" *Moreno v. Deutsche*

12

*Bank Americas Holding Corp.*, 2017 WL 3868803, at 11 (S.D.N.Y Sept. 5, 2017). Indeed, "Class Counsel is one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this." *Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at \*9 (S.D. Ohio Feb. 18, 2021). Class Counsel have won favorable rulings on class certification and dispositive motions in several ERISA cases, recently tried two other ERISA class actions (in addition to this action), successfully litigated an appeal before the First Circuit, and have negotiated class action settlements that have received court approval in numerous cases in addition to this case. *First Richter Decl. ¶¶ 22–23.* Accordingly, "it is entirely warranted for this Court to pay heed to their judgment in approving, negotiating, and entering into a putative settlement." *In re The Mills Corp.*, 265 F.R.D. at 255; *Sims I*, 2019 WL 1995314, at \*4.

Moreover, Plaintiff himself has submitted a declaration in support of the Settlement as the appointed class representative. *See Declaration of Benjamin Reetz in Support of Plaintiff's Motion for Preliminary Approval of Partial Class Action Settlement with Lowe's Defendants, Dkt. 221-7 ¶¶ 4–7.* This Court previously found both Plaintiff and Class Counsel to be adequate to represent the interests of the class. *See Dkt. 234 at 2, Dkt. 97 at 3.*

## III.   THE SETTLEMENT TERMS ARE ADEQUATE AND REASONABLE

To evaluate the adequacy of a settlement, the Court may consider:

(1) the relative strength of the case on the merits, (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, (5) the degree of opposition to the proposed settlement . . . .

*Gaston II*, 2021 WL 2077812, at \*6 (citing *Jiffy Lube*, 927 F.2d at 159; *West*, 2018 WL 1146642, at \*4). Once again, each of the relevant factors support approval of the settlement.[6]

---

[6] The fourth factor has little bearing on the analysis here. The solvency of Defendants has not been an issue in this case. *See Sims I*, 2019 WL 1995314, at \*5 ("Class Counsel have not expressed any

13

## A. Relative Strength of Plaintiff's Case Against the Lowe's Defendants and Applicable Defenses

The first two factors of the adequacy inquiry "compel the Court to examine how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case." *In re The Mills Corp.,* 265 F.R.D. at 256. Considering the relevant circumstances here, the Settlement is both adequate and reasonable. Indeed, the Settlement represents a "best of both worlds" scenario for the class, which preserves its claims against Aon as the primary Defendant while still assuring the class a substantial monetary recovery and critical prospective relief.

As Plaintiff noted in seeking preliminary approval of the Settlement, the claims against Aon have always been the strongest claims in this case. When Plaintiff filed the action, only the Lowe's Defendants—not Aon—filed a motion to dismiss. Once discovery was complete, the record reflected significant evidence of disloyalty by Aon but did not support a breach of loyalty claim against the Lowe's Defendants. *See Dkts. 163 (redacted) & 168 at 1 n.2* ("Based on discovery in this case, Plaintiff does not intend to continue to pursue a breach of loyalty claim against Lowe's, as he does against Aon."). At the summary judgment stage, Plaintiff discussed his claims against Aon first, with the Lowe's Defendants presented as secondary defendants who Plaintiff alleged simply did not take adequate precautions to protect the Plan from Aon. *See Dkts.*

---

concerns as to the solvency of the defendants or their ability to recover if they were to proceed to trial."). Even if collectability of a judgment were an issue, the Settlement puts that issue to rest by providing a guaranteed payment. Accordingly, the Court may give this factor little or no weight. *See In re Red Hat, Inc. Sec. Litig.*, 2010 WL 2710517, at *4 (E.D.N.C. June 11, 2010), *report and recommendation adopted*, 2010 WL 2710446 (E.D.N.C. July 8, 2010) ("There have been no representations as to the solvency, or lack thereof, of the Defendants, and the Court gives that factor little or no weight."); *Robinson v. Carolina First Bank NA*, 2019 WL 2591153, at *11 (D.S.C. June 21, 2019) ("There is no evidence that Defendant is in danger of becoming insolvent . . . . As such, this factor does not impact the Court's approval of the Settlement Agreement.").

14

*135 (redacted), 136, 185 (redacted), & 186.* Finally, the evidence at trial showed that Aon's consultants (e.g., Mr. Punnoose) succumbed to serious conflicts of interest, whereas the Administrative Committee members (e.g., Mr. Green) were earnest and looked to Aon for guidance.

Under these circumstances, Aon bears primary responsibility for the decisions that were made regarding the Plan's investments. *See* Restatement (Third) of Trusts § 102 cmt. b(2) (listing four factors that may be considered when evaluating the relative fault of two breaching trustees: (1) whether one trustee "mislead the other(s) into joining in the breach"; (2) whether "one trustee commit[ted] the breach intentionally . . . while the other(s) did so by simple negligence"; (3) whether "one trustee, having greater experience or expertise, essentially control[led] the actions of the other(s), such as where a trustee without business experience regularly relied on the judgment of the experienced trustee"; and (4) and whether "one trustee act[ed] essentially alone while the joint and several liability of the other(s) resulted merely from a failure to exercise reasonable care to prevent the breach or from improper delegation or monitoring"). Indeed, Aon bears 100% responsibility for management of the Plan's investments after it was appointed as the Plan's delegated investment manager. *See* 29 U.S.C. § 1105(d) ("If an investment manager or managers have been appointed …, no trustee shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager.").[7]

---

[7] At the time the Settling Parties reached a settlement, the Lowe's Defendants argued in a pending motion that they had no exposure for monitoring Aon because (1) the Court had already dismissed Plaintiff's claim that Lowe's failed to adequately monitor Aon, *see Dkt. 58 at 16*; and (2) they believed no monitoring claim was alleged against the Administrative Committee in the FAC, *see Dkt. 214 at 1*. Even if Plaintiff had succeeded in defeating this motion, any liability on the part of the Administrative Committee for failing to adequately monitor Aon would have been derivative in nature, and would not have yielded additional damages.

15

Based on the respective roles of the parties and the inherent risks of class action litigation, *see US Airline Pilots Ass'n v. Velez*, 2016 WL 1615408, at *4 (W.D.N.C. Apr. 22, 2016) (*"Velez I"*) ("Regardless of the strength of a claim on the merits, one can never ensure a finding of liability in complex litigation"), the $12.5 million settlement with the Lowe's Defendants is fair, reasonable, and adequate. As a basis for comparison, it is useful to consider the settlement that was reached in another recent case involving the Insperity 401(k) Plan. *See Pledger v. Reliance Trust Co.*, No. 1:15-cv-04444 (N.D. Ga. Oct. 12, 2020), Dkt. 280-1 (memorandum in support of motion for preliminary approval) and Dkt. 280-2 (settlement agreement). In that case, Reliance Trust (which was represented by the same counsel as Aon in this case) served as the discretionary investment manager to the Insperity 40(k) plan. *See Pledger*, No. 1:15-cv-04444 (N.D. Ga. April 15, 2016), Dkt. 37 at ¶¶ 18, 35 (Amended Complaint). Similar to here, the plaintiffs alleged that "Reliance Trust acted to benefit itself and the other defendants by selecting and retaining high-cost and poorly performing investments for the Plan, including investing $500 million of the Plan's assets in its own newly-created and untested proprietary target-date funds." *Id. at ¶ 2.* In addition, the plaintiffs alleged that Insperity Holdings (the plan sponsor) was "liable for Reliance Trust's acts or omissions in carrying out delegated responsibilities because Insperity Holdings knowingly participated in or failed to remedy Reliance Trust's breaches of fiduciary duties." *Id. at ¶¶ 23, 202(d).* After a two-week trial, the plaintiffs reached a settlement with Reliance Trust that "resolve[d] *all* claims against *all* Defendants." *Pledger*, No. 1:15-cv-04444, Dkt. 280-1 at 8 (emphasis added). Under the terms of that settlement, Reliance Trust paid $39.8 million to resolve the case, and Insperity Holdings and its affiliated entities paid nothing. *Id.; see also Pledger*, No. 1:15-cv-04444, Dkt. 280-2 at ¶ 5.4 (providing that "Reliance Trust, or its agents or insurers, will deposit" all monies into the settlement fund). That settlement received final court approval,

16

*see Pledger v. Reliance Tr. Co.*, 2021 WL 2253497, at *1 (N.D. Ga. Mar. 8, 2021), and this Court should similarly grant final approval of the Settlement here. The Settlement Class is effectively $12.5 million ahead of the class in *Pledger*, having negotiated a $12.5 million payment from the plan sponsor while preserving all claims against the investment manager.

Moreover, the Lowe's Defendants also have agreed to critical prospective relief. Specifically, the Administrative Committee has agreed to "issue a request for proposal ("RFP") for a delegated fiduciary investment manager for the Plan." *Settlement Agreement ¶ 6.1.* As part of the RFP process "[t]he Administrative Committee will engage an independent consulting firm (unrelated to Aon Hewitt) with experience conducting similar RFPs." *Id.* Further, "[t]he candidates in the RFP process will be free to propose alternative investment options, investment strategies, and/or investment lineup structures to the Administrative Committee," and "the Administrative Committee will consider all options presented." *Id.* In other words, the Administrative Committee has agreed to reevaluate through an RFP process all of the relevant decisions (regarding investment lineup structure, the delegated investment manager, and specific investment strategies and investment options) that led to the selection of the Aon Growth Fund for the Plan. This prospective relief addresses the core issues raised by the lawsuit, and further supports approval of the Settlement. *See Sims I*, 2019 WL 1995314, at *3, *5 (noting value of "[n]on-monetary relief" and approving settlement agreement that "require[d] the defendants to solicit requests for proposals and hire an independent consultant to evaluate the Plan's investment options and make other recommendations").

### B. Anticipated Duration and Expenses of Additional Litigation

The third *Jiffy Lube* factor asks the Court "to weigh the settlement in consideration of the substantial time and expense litigation of this sort would entail if a settlement was not reached." *In re The Mills Corp.*, 265 F.R.D. at 256. This factor strongly supports the Settlement here. It is

17

well-recognized that ERISA class cases involving retirement plans "often lead[] to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). Indeed, cases such as this can extend for a decade before final resolution, sometimes going through multiple appeals. *See, e.g., Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (recounting lengthy procedural history of case that was initially filed in 2006, and remanding to district court a second time); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed in 2007); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (noting that the case had originally been filed on September 11, 2006). Further, the amount of resources that are required to litigate an ERISA class case are substantial. One of the chief advantages of the Settlement is that avoids the time and expense of further litigation between the Settling Parties. This also favors approval of the Settlement. *See Gaston v. LexisNexis Risk Sols. Inc.*, 2021 WL 244807, at *6 (W.D.N.C. Jan. 25, 2021) ("*Gaston I*") ("[T]he Parties anticipate incurring substantial additional costs in pursuing this litigation further. The level of additional costs would significantly increase as the appellate process proceeded and any effort that might be required if the matter is remanded for further proceedings. Thus, the likelihood of substantial future costs favors approving the proposed settlement.") (citing *Sims I*, 2019 WL 1995314, at *4–5; *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 833 (E.D.N.C. 1994)); *see also Velez II*, 2016 WL 4698540, at *4.

## C.    The Degree of Opposition to the Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *West*, 2018 WL 1146642, at *6 (citation omitted); *Seaman v. Duke Univ.*, 2018 WL 718961, at *3 (M.D.N.C. Jan. 4, 2018). Here, out of more than 74,000 class members, only one lodged an objection, amounting to approximately 0.001% of the Class. The near unanimous

18

support for the Settlement further evidences its reasonableness and adequacy. *See Velez II*, 2016 WL 4698540, at *4 ("Finally, the Court finds that the degree of opposition to the settlement is minimal and the support is significant. Although there were timely objections from fourteen individuals (three sets of unique objections), the Court finds the number to be insignificant when considering a class size of 5,222 individuals."); *Skochin v. Genworth Fin., Inc.*, 2020 WL 6532833, at *14 (E.D. Va. Nov. 5, 2020) ("It is also significant that objections were lodged by 0.021% of the class. . . [T]he fact that so few members of the class objected to, or opted out of, the settlement is a testament to the conclusion that the Notice was adequate as well as to whether the settlement is fair and reasonable."); *In re The Mills Corp.*, 265 F.R.D. at 258 (observing that limited or no objections "gives the Court a great deal of confidence in the settlement[']s adequacy"); *MicroStrategy*, 148 F. Supp. 2d at 667–68 ("Such a lack of opposition to the partial settlement strongly supports a finding of adequacy[.]").

Moreover, the lone objection that was received raises no issues with respect to the adequacy of the Settlement. Rather, the objection concerns Class Counsel's request for attorneys' fees. *See Third Richter Decl. Ex. 2*. For the reasons that follow, Class Counsel respectfully submit that this objection should be overruled.

First, the objector's proposed 10% attorney fee award is not consistent with the usual and customary percentage in a case such as this. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *3 (M.D.N.C. Sept. 29, 2016) (*"Kruger II"*) ("[C]ourts have found that '[a] one-third fee is consistent with the market rate' in a complex ERISA 401(k) fee case such as this matter"); *Chrismon v. Pizza*, 2020 WL 3790866, at *5 (E.D.N.C. July 7, 2020) ("Many courts in the Fourth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund is reasonable.")

(collecting cases);[8] *accord Clark II*, 2019 WL 2599201, at *5 (approving one-third fee in ERISA

class action); *Sims II*, 2019 WL 1993519, at *2 (approving one-third fee to Nichols Kaster, PLLP

and co-counsel in ERISA class action); *Intravaia v. Nat'l Rural Elec. Coop. Ass'n*, No. 1:19-cv-

00973, Dkt. 114 at 1 ¶ 1 (E.D. Va. Feb. 25, 2021) (same).[9] Indeed, the objection does not address

or analyze any of the relevant criteria for evaluating attorneys' fees awards in the Fourth Circuit.

*Cf. Sims v. BB&T Corp.*, 2019 WL 1993519, at *1 (M.D.N.C. May 6, 2019) (*"Sims II"*)

(identifying criteria set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir.

1978)); *Clark v. Duke Univ.*, 2019 WL 2579201, at *5 (M.D.N.C. June 24, 2019) (*"Clark II"*)

(same). Accordingly, there is no legal basis for the objection. *See Skochin*, 2020 WL 6532833,

at *10 ("The objectors to a class settlement generally bear the burden of proving any assertions

they raise challenging the reasonableness of a class action settlement."); *In re Serzone Prod. Liab.

Litig.*, 231 F.R.D. 221, 234–35 (S.D.W. Va. 2005) (overruling objections where objectors did not

cite case law or other relevant authority to support their position).

Second, the objector does not appear to consider the substantial amount of work performed

by Class Counsel or the risks that they assumed in undertaking this matter on a contingency basis.

As Class Counsel explained in connection with their fee application, the requested one-third fee

($4,166,667) is **less** than their lodestar ($4,763,951.25). *See Dkt. 249 at 16; Declaration of Kai*

---

[8] *See also Krueger*, 2015 WL 4246879, at *2 ("[I]n comparing the requested fee with fee awards
in similar cases, the relevant comparators are ERISA class actions asserting breaches of fiduciary
duties in the selection and retention of plan investment options …. In such cases, courts have
consistently awarded one-third contingent fees."); *Tussey v. ABB, Inc.*, 2019 WL 3859763, at *4
(W.D. Mo. Aug. 16, 2019) ("Class Counsel's requested one-third fee is common in these cases.").
[9] *See also, e.g.*, *Karpik*, 2021 WL 757123, at *1 (approving one-third fee to Nichols Kaster, PLLP
in ERISA class action); *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *14 (E.D. Pa. Feb. 28, 2020)
(same); *Beach v. JPMorgan Chase Bank*, No. 1:17-cv-00563, Dkt. 232 (S.D.N.Y. Oct. 7, 2020)
(same); *In re M&T Bank Corp. ERISA Litig.*, No. 1:16-cv-375, Dkt. 190 (W.D.N.Y. Sept. 3, 2020)
(same); *Clark v. Oasis Outsourcing Holdings Inc.*, No. 18-81101, Dkt. 23 (S.D. Fla. Dec. 20, 2018)
(same); *Andrus v. New York Life Ins. Co.*, No. 16-05698, Dkt. 83 (S.D.N.Y. June 15, 2017) (same).

*Richter in Support of Plaintiff's Motion for Approval of Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Service Award ("Second Richter Decl."), Dkt. 249-1, ¶ 12*. This further supports the reasonableness of the requested fee, as it is typical for class counsel to receive a lodestar multiplier to compensate them for the risks that they assumed. *See Kruger II*, 2016 WL 6769066, at \*4–5 (noting "in cases where 'the risks of the litigation are immense and [there is a] risk of receiving little or no recovery,' like this one, the court may apply a risk multiplier to compensate the attorneys for the risk of nonpayment in the event the litigation was unsuccessful" and collecting cases adopting multipliers ranging from 2.5 to 8.9); *In re The Mills Corp.*, 265 F.R.D. at 261–62 (overruling two objections to attorneys' fees, observing that the average lodestar multiplier identified in a study cited by one objector was 4.5, which was "substantially higher than the applicable multiplier in this case"); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 507 (M.D.N.C. 2018) ("Since collective counsel's lodestar multiplier is far below those generally accepted, their requested fees are reasonable.").

Third, the objector appears to be under the misimpression that attorneys' fees should be reduced if Class Counsel receive reimbursement of their costs. *See Third Richter Decl. Ex. 2* ("I feel if Class Counsel is going to be reimbursed for all actual & anticipated litigation costs and administrative expenses associated with the Settlement, their award for Attorneys' Fees should be no more than 10% …."). "The prevailing view is that expenses are awarded *in addition* to the fee percentage." *Sims II*, 2019 WL 1993519, at \*4 (emphasis added) (quoting *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at \*3 (M.D.N.C. Jan. 10, 2007)). Moreover, even if Class Counsel's request for reimbursement of expenses were relevant to the fee request, Class Counsel are not requesting reimbursement of "all actual & anticipated litigation costs and administrative expenses associated with the settlement." *See Third Richter Decl. Ex. 2.* In connection with the

21

Settlement, Class Counsel are only seeking reimbursement of *half* of their litigation costs through the date of Settlement.[10] *See Dkt. 249 at 17*; *Second Richter Decl. ¶ 16*. Thus, even if approved as requested, the pending request for costs and expenses will not make Class Counsel whole.

Finally, the objection is at odds with the Independent Fiduciary's analysis. As noted above, the Independent Fiduciary found that the requested attorneys' fees are reasonable. *See Third Richter Decl. Ex. 1 at 8–9*. This further supports approval of the requested fees. *See Sims II*, 2019 WL 1993519, at *5 (approving one-third fee, noting that "the Independent Fiduciary … determined that Class Counsel's fee award and costs were reasonable in light of the Settlement achieved.").[11]

Regardless, the Settlement should be approved because there were no objections to the Settlement terms, the Independent Fiduciary has approved those terms, and the Settlement is not conditioned on approval of Class Counsel's attorneys' fees. *See Settlement Agreement ¶ 7.1*.

## IV. THE CLASS NOTICE WAS REASONABLE

The class notice program in this case also was reasonable and satisfied the requirements of Rule 23 and due process. The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice that was provided here.

As noted above, the Settlement Administrator sent the Court-approved Settlement Notices to Class Members via U.S. Mail. *See supra* at 8. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *accord Intravaia v. Nat'l Rural*

---

[10] Plaintiff and Class Counsel will seek reimbursement of the remaining expenses, and additional expenses through trial, if and when the remainder of the case is successfully resolved against Aon.
[11] The fact that the objection is not joined by any other class members is also noteworthy. *See Berry v. Schulman*, 807 F.3d 600, 619 (4th Cir. 2015) ("[An] almost complete lack of objection to the fee request provides additional support for the district court's decision to approve it.") (citing *Flinn*, 528 F.2d at 1174).

*Elec. Coop. Ass'n*, No. 1:19-cv-00973, Dkt. No. 113 (E.D. Va. Feb. 2, 2021) (finding notice via U.S. mail "met the requirements of Rules 23(c)(2) and (3), and due process, and constituted the best notice practicable under the circumstances"); *Clark I*, 2019 WL 2588029, at *2. Further, the record reflects that over 99% of the Notices of Settlement were successfully delivered. *See Mitchell Decl. ¶ 13*. This confirms the effectiveness of the notice program in this case. *See West*, 2018 WL 1146642, at *7 ("The notices were received by 95% of the Class Members, a percentage that is on the upper end of the widely accepted standard of 70-95% to establish high-reaching notice."). Moreover, the Notices were accessible to all class members via the settlement website.[12]

Finally, the content of the Notices also was reasonable. The Notices included, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) a description of the proposed Bar Order; (6) instructions for submitting a rollover form (in the event that Former Participant Class Members so elect); (7) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (8) the date, time, and location of the final approval hearing; (9) contact information for the Settlement Administrator; and (10) information regarding Class Counsel and the amount that Class Counsel may seek in attorneys' fees and costs. *See Mitchell Decl. Exs. 1 & 2*. This information is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950); *accord Sims I*, 2019 WL 1995314, at *2 (approving substantially similar notice program).

---

[12] *See Gaston I*, 2021 WL 244807, at *7 (approving notices that were supplemented by "(1) a settlement website; [and] (2) a call center"); *Sims I*, 2019 WL 1995314, at *2; *Kruger v. Novant Health, Inc.*, 2016 WL 6769054, at *4–5 (M.D.N.C. May 18, 2016) ("*Kruger I*").

23

## V. THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS

In its Order for Preliminary Approval of the Settlement, the Court preliminarily certified the following Settlement Class:

> All participants and beneficiaries of the Lowe's 401(k) Plan whose Plan account balances were invested in the Aon Growth Fund at any time on or after October 1, 2015, through the date of preliminary approval, excluding the Settling Defendants, any of their directors, and any officers or employees of the Settling Defendants with responsibility for the Plan's investment or administrative functions.

*Dkt. 234 ¶ 2.* This Settlement Class is consistent with the class previously certified by the Court. *Id.* (citing *Dkt. 97*). Nothing has changed since the Court preliminarily certified the Settlement Class for preliminary approval. Accordingly, the Court should reaffirm its approval of Settlement Class.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement, and enter the accompanying proposed Final Approval Order.

Respectfully Submitted,

Dated: August 12, 2021

**NICHOLS KASTER, PLLP**

/s/ <u>Kai H. Richter</u>
Kai H. Richter, MN Bar No. 0296545*
Paul J. Lukas, MN Bar No. 22084X*
Brock J. Specht, MN Bar No. 0388343*
Mark E. Thomson, MN Bar No. 0398260*
Patricia C. Dana, MN Bar No. 0400803*
       * *admitted pro hac vice*
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
krichter@nka.com
lukas@nka.com
bspecht@nka.com
mthomson@nka.com
pdana@nka.com

**THARRINGTON SMITH, L.L.P.**
F. Hill Allen, N.C. Bar No. 18884
Post Office Box 1151
150 Fayetteville Street
Raleigh, N.C. 27602-1151
Telephone: (919) 821-4711
Fax: (919) 829-1583
Email: hallen@tharringtonsmith.com

*Attorneys for Plaintiff and the Class*